UNITED STATES of America, for the Use and Benefit of EVERGREEN PIPELINE CONSTRUCTION CO., INC., and Evergreen Pipeline Construction Co., Inc., Plaintiffs,

v.

MERRITT–MERIDIAN CONSTRUCTION CORPORATION and General Insurance Company of America, Defendants.

MERRITT–MERIDIAN CONSTRUCTION CORPORATION, Third–Party Plaintiff,

v.

TRANSAMERICA PREMIER INSURANCE COMPANY, INC., Third–Party Defendant.

No. 90 Civ. 5106 (DC).

United States District Court, S.D. New York.

July 7, 1995.

---

Law Offices of James N. Cahill by James N. Cahill, Robert S. Beehm, Endicott, NY, for plaintiff.

Daniel L. Saxe, New York City, for defendants Merritt–Meridian Const. Corp. and General Ins. Co. of America.

Hart & Hume by Benjamin D. Lentz, New York City, for defendant General Ins. Co. of America.

McElroy, Deutsch & Mulvaney by James M. Mulvaney, Morristown, NJ, for third-party defendant Transamerica Premier Ins. Co., Inc.

## OPINION

CHIN, District Judge.

On November 22, 1994, after nearly five years of litigation and following a four-week trial, the jury returned a verdict in this action in favor of plaintiff in the amount of $619,434.51. The jury found that defendant general contractor Merritt–Meridian Construction Corporation ("MMCC") materially breached its agreement (the "Subcontract") with plaintiff subcontractor Evergreen Pipeline Construction Co., Inc. ("Evergreen"). The jury invalidated several provisions in the Subcontract that would have limited plaintiff's recovery, and found that MMCC was liable to Evergreen for $22,350.51 for written change orders, $157,302 for delay damages, and $175,632 for other extra work.

On MMCC's counterclaims, the jury found that plaintiff did not materially breach the

Subcontract, but it awarded MMCC $47,651 in "backcharges" for the period that plaintiff was working at the site and $10,400 for "change order no. 2." MMCC also sought to enforce two instruments that had been executed by Jack DeLello, Evergreen's president. The jury found the promissory note to be unenforceable as not supported by consideration, and it voided the confession of judgment as having been signed under duress and due to fraud.

The jury reached a final award by taking the $355,284.51 it found plaintiff suffered in damages, and adding to that: $400,000 as the agreed base contract amount; $204,570 for undisputed mass rock work; and $158,095 for undisputed trench rock work. The jury then subtracted $440,464 in payments from MMCC to Evergreen and $58,051 in credits for the backcharges and change order no. 2. Based on the above findings and calculations, the jury awarded plaintiff a total of $619,434.51.

Before the Court are several post-trial motions. Defendants move for judgment as a matter of law on the issues of plaintiff's claims for delay damages and orally requested extra work, and the question of whether plaintiff's alleged breach of the Subcontract precludes any recovery by plaintiff on that agreement. Defendants also move for a new trial on the independent grounds that the issue of punitive damages was improperly submitted to the jury, and that the verdict was against the weight of the evidence.

Plaintiff cross-moves for prejudgment interest and attorneys' fees and costs. Plaintiff also moves for the equitable remedy of a court order granting Evergreen judgment on its promissory note with MMCC and further compelling MMCC to enter a satisfaction of MMCC's state court judgment against Evergreen.

Lastly, third-party defendant Transamerica Premier Insurance Company ("TPI") cross-moves for attorneys' fees and costs.

### Summary of the Facts

Evergreen was founded by its president Jack DeLello in Colorado. Evergreen specialized in installing pipeline, particularly for utilities in the Rocky Mountain states. When that work became sparse, DeLello came to New York State seeking work for Evergreen. DeLello learned that a contract had been awarded to MMCC for work at the United States Military Academy at West Point, and he made inquiries as to the availability of subcontract work.

MMCC, the general contractor, is a general construction company based in Beacon, New York. In 1987, the corporate secretary of MMCC was Dennis Capolino, and other members of the Capolino family served as senior officers of MMCC and affiliated companies. Prior to 1987, MMCC had performed various construction assignments at West Point on behalf of the United States Army Corps of Engineers. In 1987 MMCC and the Department of the Army, New York District, Corps of Engineers entered into a general contract entitled "Modernization & Expansion of Academic Facilities, Phase 1B" (the "Project"). The Project price was $12.5 million and an additional expenditure of $1.25 million was approved for alternate bid and unit price items, including the removal of trench and mass rock. The Project called for substantial interior and exterior work on existing buildings, as well as substantial site work, including drilling and blasting rock, laying utility lines and a drainage system, constructing new roads and parking lots, and extensive landscaping.

Much of the Project had already been subcontracted when DeLello contacted MMCC, but DeLello secured for Evergreen the drilling, blasting and excavation work. On behalf of their respective companies, Dennis Capolino and Jack DeLello entered into the Subcontract, dated August 13, 1987.

There were difficulties from the moment that Evergreen arrived on the site. DeLello testified at trial that Evergreen was mobilized too early, i.e., when he arrived at the site there was insufficient work and his personnel and equipment were idle. There were unanticipated difficulties with natural conditions, e.g., flooding in the trenches alongside West Point Highway. When the work did proceed there was more subsurface mass rock than anticipated, requiring extra drilling

and blasting. The Subcontract was amended to cover some of this unforeseen work with written extra-work orders.

Evergreen delayed its performance while it waited for MMCC to provide surveyors. DeLello testified that after MMCC failed to deliver on its repeated promises to provide surveyors, he and Dennis Capolino agreed at meeting on January 7, 1988, that Evergreen would hire and pay the surveyors and MMCC would reimburse this expense. According to DeLello this method worked well at first with MMCC honoring the weekly bills for surveying. MMCC later began refusing the bills. Evergreen then fired the surveyors, only to see MMCC hire them back and place them on its payroll.

As the project advanced, the relationship between MMCC and Evergreen deteriorated, and there were ongoing disagreements on interpreting and allocating responsibilities under the Subcontract. Capolino testified that pervasive problems stemmed from Evergreen's lack of experience with this type of work. DeLello testified that MMCC withheld payments and was trying to destroy Evergreen after extracting substantial services.

In March 1988 MMCC told Evergreen that it was not performing quickly enough. MMCC began to supplement Evergreen's work with MMCC's personnel and equipment. MMCC then "backcharged" for these services. In April, MMCC presented Evergreen with a bill for approximately $200,000 in backcharges. DeLello protested that the backcharges were grossly inflated.

Evergreen did not have enough cash on hand to pay its bills as they came due. MMCC twice paid Evergreen's quarterly insurance payments. At a negotiating session about which the parties provided sharply differing testimony, DeLello executed a promissory note in the amount of $80,000 and a confession of judgment stating that Evergreen had breached the Subcontract and was liable for $80,000 in liquidated damages.

MMCC stopped paying for Evergreen's insurance. Dennis Capolino met with DeLello and told him that he wanted Evergreen off the job, because the failure to maintain insurance was a breach of the Subcontract. The next day, after speaking with his brother Richard, Dennis Capolino met with DeLello to discuss the backcharges. DeLello testified that it was a confrontational meeting, with both sides contesting what was owed to whom. That night, Evergreen moved its equipment off the site. The next day, Evergreen took steps to ensure the integrity of its work, and it then left the Project, before its work was completed.

The record contains substantial evidence to support the jury's determination that MMCC breached its contractual obligations to Evergreen. For example, the record contains substantial evidence that MMCC breached its obligation to deal with Evergreen in good faith.

Don Scaglione, a former employee of MMCC who was MMCC's Project Manager on the Project from approximately May or June 1987 until May 1988, testified that MMCC's payments to Evergreen for work performed were "slow and controlled." [1] Scaglione testified that "Dennis [Capolino] wanted to spoon-feed Jack," and thus Scaglione did so, although he did not agree with the approach. He testified that although MMCC received payment for the removal of unexpectedly large quantities of mass rock, and although "we were paid for it before the change order was approved, ... we didn't pay Evergreen for it," because "we were trying to keep him [DeLello] on the job without paying him everything." He also testified that when DeLello complained to Dennis Capolino about not getting paid, Capolino responded by saying "sue me."

Scaglione's testimony was corroborated by DeLello, who testified that during the meeting the night before Evergreen left the site, Capolino put his feet up on the table to show that he had written on the soles of his shoes the words "JACK SUCKS." Later that day, DeLello testified that Capolino said to him:

---

1. The parties did not order a transcript, and thus any quotations included in this decision are based on the Court's notes and recollections.

"We're not going to give you a dime, we don't have to. It would take you a hundred thousand dollars to retain an attorney. I'll tie you up for six years. Go fuck yourself."

Dennis Capolino's attitude toward DeLello was also demonstrated by his sarcastic use of the phrase "Dearest Jack" in a letter that he sent to DeLello on March 21, 1988 complaining of purported deficiencies in Evergreen's work. (DX 1731). In terms of backcharges that MMCC assessed against Evergreen, Scaglione testified that when he prepared the backcharges, Dennis Capolino told them "it wasn't enough." Capolino told him to "build it up," to "triple it." Scaglione testified that, although he told Capolino that "it wasn't right," he nevertheless did as Capolino instructed him. He testified, however, that "the backcharges are not correct; they're inflated."

MMCC's own invoices show that Evergreen was backcharged for equipment that was idle because of inclement weather or worker holidays. Moreover, although Scaglione proposed to backcharge Evergreen $300 per day for the use of a John Deere 792, for example, on April 8, 1988 (PX Q), Evergreen was shown being charged $450 per day on April 22, 1988 for the same piece of equipment (PX 58), and at trial the rate increased further to $600 per day ($75 per hour, 8 hours per day). (DX 6025A). These varying prices were for the same piece of equipment used during approximately the same time period, and hence the jury reasonably could have found that MMCC grossly inflated the backcharges.

### Procedural History

On January 25, 1989, plaintiff filed a complaint pursuant to 40 U.S.C. § 270a et seq. (the "Miller Act") against MMCC and its surety, General Insurance Company of America ("General"). Defendants counterclaimed and Judge Goettel consolidated this action with a removed state court action brought by MMCC against DeLello.

On June 29, 1989, MMCC, then represented by Stephen O'Hare, Esq., filed a third-party complaint against Evergreen's performance bond surety, TPI. The third-party complaint included claims of civil RICO and fraud. In March and April of 1991 the parties were granted leave to amend their pleadings. Plaintiff asserted an additional cause of action in *quantum meruit.* Mr. O'Hare, as counsel for both defendants, filed an answer to the amended complaint, and raised two counterclaims: (i) against Evergreen for breach of contract and negligence and seeking $500,000 in damages in favor of MMCC; and (ii) against Evergreen, TPI, and others for fraud and civil RICO and claiming that MMCC "has suffered great loss and damaged [sic] in its business in the sum of one hundred million ($100,000,000.00) dollars."

On April 2, 1992, TPI moved for partial summary judgment seeking dismissal of all claims against it, except the breach of contract claim under the bond. In a memorandum decision dated July 17, 1992, Judge Goettel fully adopted a Report and Recommendation issued by Magistrate Judge Fox and granted TPI's motion. Judge Goettel also imposed a $1,000 sanction against attorney O'Hare based on Magistrate Fox's conclusion that "Merritt's counsel did not read the law prior to asserting the RICO claim and failed to read it again after receiving Transamerica's motion papers." Report and Recommendation dated June 22, 1992 at 20.

After a summary jury trial,[2] and pursuant to a stipulation filed in April 1993, MMCC and General substituted Daniel Saxe, Esq. as their counsel of record, replacing Stephen O'Hare, Esq.[3] On June 15, 1993, MMCC and General moved to dismiss the only surviving claim (for breach of contract), in MMCC's second amended third-party complaint against TPI. Defendants also moved

---

**2.** For settlement purposes, Judge Goettel conducted a summary jury trial on February 10 and 11, 1993. At the conclusion of the summary trial, the jury returned a "verdict" of $692,324 in compensatory damages. That amount, which does not reflect any credits to MMCC, is remarkably similar to the actual verdict rendered after a full trial.

**3.** Hart & Hume was substituted for Mr. Saxe as attorneys for General on January 23, 1995, after General apparently determined that there was, at that point in the case, a possible divergence of interests.

to dismiss MMCC's second counterclaim against Evergreen, a claim that was similar to the conspiracy claim previously dismissed as to TPI.

Evergreen objected to the dismissal of the malicious conspiracy counterclaim, and argued that any dismissal should include an award of Rule 11 sanctions against MMCC. TPI did not oppose dismissal of the remaining breach of contract claim against it, but similarly argued that any dismissal be conditioned on MMCC paying TPI's litigation fees. It further argued that if the dismissal were "with prejudice," then TPI should be awarded Rule 11 sanctions against MMCC.

On July 2, 1993, ruling from the bench, Judge Goettel dismissed MMCC's second counterclaim against Evergreen, adding "[b]ecause it appears there is merit to plaintiff's contention that the defendants brought the counterclaim solely for purposes of harassing plaintiff, the plaintiff's request for attorney's fees with costs and expenses are granted but the actual amount to be set will be held in abeyance till the final disposition of this litigation." (7/2/93 Tr. at 9). Judge Goettel also dismissed the remaining cause of action of the third-party complaint against TPI with prejudice, stating "[w]e will grant fees and costs but we will not determine their amount until after trial." (*Id.* at 10).

On September 27, 1994, defendants filed a motion in limine and, after hearing oral argument from counsel, I denied the motion in part and granted it in part. I permitted testimony concerning (i) subsequent oral modifications of the Subcontract; (ii) interpretations of plaintiff's exhibit number 72, "Addition to Contract Amount for Drilling and Blasting General Rock" and (iii) the claim for punitive damages. I prohibited evidence regarding (i) discussions prior to, or contemporaneous with, the Subcontract offered to interpret unambiguous terms; (ii) previously dismissed parties and claims and (iii) the alleged reputation of MMCC for unfair bargaining with subcontractors.

In October and November 1994 this action was tried to a jury. At the close of plaintiff's direct case, defendants moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) with respect to (i) punitive damages; (ii) plaintiff's *quantum meruit* claim; (iii) certain of plaintiff's extra work claims; (iv) plaintiff's delay claim; and (v) plaintiff's alleged breaches of the Subcontract. I reserved decision. At the close of all the evidence, the motion was renewed, and I dismissed plaintiff's claim for punitive damages and denied the remainder of defendants' motion.

These motions followed the verdict.

### Discussion

### A. The Defendants' Motion

Defendants renew their motion for judgment pursuant to Fed.R.Civ.P. 50(b) with respect to plaintiff's claims for orally requested extra work and delay damages, and defendants further contend that the jury could only have reasonably concluded that Evergreen—and not MMCC—breached the Subcontract. Alternatively, defendants move for a new trial pursuant to Fed.R.Civ.P. 59(a) on the grounds (i) that the jury was improperly permitted to hear evidence offered in support of the punitive damages claim, which was dismissed at the close of the evidence and (ii) that the verdict was against the weight of the evidence.

#### 1. The Motion to Set Aside the Verdict

A jury verdict is not to be set aside and judgment entered as a matter of law pursuant to Fed.R.Civ.P. 50(b) unless " 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [jurors] could have reached.' " *Samuels v. Air Trans. Local 504*, 992 F.2d 12, 14 (2d Cir.1993) (*quoting Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970)). In considering a Rule 50(b) motion, a trial court "must view the evidence in a light most favorable to the non-movant and grant that party every reasonable inference that the jury might have drawn in its favor." *Samuels*, 992 F.2d at 16. Judgment notwithstanding the verdict is to be entered only where there is such a "complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer

surmise and conjecture." *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 168 (2d Cir.1980); *accord Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154 (2d Cir.1994).

### a. *Orally Requested Extra Work*

The jury found that MMCC materially breached the Subcontract, and that paragraphs 11 and 25 of the Subcontract were either waived by MMCC or eliminated by the parties.[4] Based on these findings, the jury awarded plaintiff $175,632 on its extra work claim.

■ Defendants' attack on this award is two-fold: First, they contend that the jury could not reasonably have found that the parties waived or eliminated the Subcontract's requirements that (i) extra work be limited to written requests or change orders, and (ii) claims for payment for extra work be made by prompt written notice. Second, they argue that there was no legally sufficient basis supporting the amount of the award of extra work damages.

Defendants focus their challenge on whether the evidence adduced at trial established that MMCC knowingly waived these Subcontract rights. Plaintiff responds that there was ample evidence for the jury to find that both paragraphs 11 and 25 were either waived by MMCC or eliminated by the parties.

■ Under New York law, oral directions to perform extra work, or the general course of conduct between the parties, may modify or eliminate contract provisions requiring written authorization or notice of claims.

*See United States ex rel. Falco Constr. Corp. v. Summit Gen. Contracting Corp.*, 760 F.Supp. 1004, 1010 (E.D.N.Y.1991) (quoting *S. Leo Harmonay, Inc. v. Binks Mfg. Co.*, 597 F.Supp. 1014, 1032 (S.D.N.Y.1984), *aff'd* 762 F.2d 990 (2d Cir.1985)); *Davis Accoustical Corp. v. Nat'l Sur. Corp.*, 27 A.D.2d 624, 275 N.Y.S.2d 925, 927 (3d Dep't 1966) ("recovery might be had for extra work, orally directed, outside the scope of the contract" despite provision requiring prior written notice for extra work claims).

I find that the record contained substantial evidence to support the jury's finding that the parties waived or eliminated paragraphs 11 and 25 of the Subcontract.

The record is clear that MMCC personnel closely supervised Evergreen's work, that MMCC asked Evergreen from time to time to perform work that was outside the scope of the Subcontract, that Evergreen performed the work, and that MMCC accepted the benefits thereof. The documentary evidence and the testimony at trial showed that Scaglione, Tony Phillips and Dennis Capolino kept a close watch on Evergreen and they knew very well what Evergreen was doing.

Moreover, a written change order (PX 72) was provided for Evergreen's work with respect to the unexpectedly large amount of subsurface mass rock. This work, which was included in plaintiff's "extra work" claim and was an "Addition to Contract Amount" (PX 72), accounted for $122,465 of the jury's award of $175,632 in damages for "extra work." Again, Scaglione testified that although MMCC was paid by the Army Corps for this work performed by Evergreen, MMCC did not pay Evergreen. While there

---

4. The jury answered "Yes" to Questions 3(a) and (b) of the Special Verdict Sheet. Those questions provided:

> 3. If you answered Yes to Question 1 and your finding of a breach was based at least in part on plaintiff's claim that it was not paid for extra work performed at the oral request of Merritt–Meridian, then answer the following questions:
>
> a. Was paragraph 11 of the Subcontract, which provides that the Subcontractor shall perform no extra work and will not be entitled to payment for extra work without a written request or change order, waived by Merritt–Meridian or was the Subcontract modified by the parties to eliminate paragraph 11?
>
> Yes___ No___
>
> b. Was paragraph 25 of the Subcontract, which requires the Subcontractor to give written notice to the Contractor of any claim within 24 hours after the event giving rise to the claim, waived by Merritt–Meridian or was the Subcontract modified by the parties to eliminate paragraph 25?
>
> Yes___ No___

were difficulties in the measurement of the rock, the jury could have reasonably found that it was MMCC's obligation to perform the measurements, for PX 72 states that the work was an "Addition to Contract Amount for Drilling and Blasting General Rock."

A portion of the orally requested work was the surveying work performed by surveyors hired by Evergreen. DeLello testified that MMCC repeatedly promised to provide surveyors so that Evergreen could advance its work. DeLello recalled for the jury a meeting at which Dennis Capolino promised him that MMCC would reimburse Evergreen if it would place the surveyors on its payroll. The work was done, at MMCC's request, and MMCC benefited from it. The jury was entitled to find from this evidence that Evergreen was entitled to recover for the surveying "extra work."

■ Defendants' argument that there was no legally sufficient basis to support the jury's award of $175,632 on the extra work claims is also rejected.

David Alverson, a construction claim consultant, provided expert testimony on behalf of plaintiff. He testified that he reviewed extensive records regarding the Project, including account ledgers, schedules, correspondence, change orders, and payment records. Alverson presented his conclusions that MMCC owed Evergreen: $122,465 for drilling and blasting 3,449 cubic yards of mass rock, $2,500 for gasline casing work, $12,000 for surveying costs and $41,167 for work detailed in the daily analysis summary reports. The jury rejected the claim for extra work on the gasline casing, and calculated its award by adding together the other three categories for a total award of $175,-632.[5]

The jury's findings on the extra work claim were not "the result of sheer surmise and conjecture," *Mattivi*, 618 F.2d at 168, and its verdict was not "seriously erroneous." *Piesco v. Koch*, 12 F.3d 332, 344–45 (2d Cir.1993). Accordingly, the first part of defendants' mo-

tion for judgment as a matter of law is denied.

**b.** *Delay Damages*

Defendants make a two-prong challenge to the jury's award of delay damages: First, no reasonable jury could have found either that the parties waived or eliminated the written notice of claim requirement or that plaintiff met the exceptions of the "no damage for delay" clause. Second, plaintiff failed to offer adequate evidence of its delay damages, in particular, the extent to which its actual costs were increased by the improper acts by MMCC.

As discussed above, I find there was an evidentiary basis for the jury to read out of the Subcontract the written notice of claim requirement. Hence, plaintiff was not barred by the requirement of a written notice of claim from pursuing its claim for delay damages. Therefore, I next consider the Subcontract's "no damage for delay" clause and its common law exceptions.

■ Under New York law, an exculpatory "no damage for delay" clause will not be enforced where the delay was: (a) not contemplated by the parties at the time of the agreement; (b) caused by the contractor's bad faith, or its willful, malicious, or grossly negligent conduct; (c) so unreasonable that it constituted an intentional abandonment of the contract by the contractor; or (d) the result of a fundamental breach of the contract by the contractor. *See Corinno Civetta Constr. Corp. v. City of New York*, 67 N.Y.2d 297, 502 N.Y.S.2d 681, 493 N.E.2d 905 (1986); *Kalisch–Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 461 N.Y.S.2d 746, 448 N.E.2d 413 (1983).

■ The record provides a clear basis for the jury's refusal to enforce the no damage for delay clause, as there was substantial testimony about bad faith and malicious conduct by MMCC, particularly Dennis Capolino.[6] The evidence of bad faith included,

---

**5.** Alverson's numbers actually add up to $175,-623. The jury apparently transposed the last two digits and instead awarded $175,632 for these "other extra work" damages.

**6.** In the Special Verdict Sheet, the jury was asked the following questions and answered all four parts "Yes":

**2.** If you answered Yes to Question 1, and your finding of a breach is based at least in

among other things, the following: DeLello testified that MMCC failed to honor its repeated promises to provide surveyors that Evergreen required to begin its trench work. Both DeLello and Scaglione testified that MMCC "spoon-fed" payments to Evergreen; Evergreen was delayed in part because of a crippling lack of capital, which prevented Evergreen from hiring sufficient personnel to advance its work expeditiously. MMCC grossly inflated backcharges, in what the jury could have reasonably viewed as a willful, malicious attempt to "break" Evergreen. DeLello also testified that MMCC stole from Evergreen excavated material worth $20,000. This material had been stockpiled in the north parking lot by Evergreen for use as backfill. The record is replete with evidence of Dennis Capolino's mistreatment of DeLello.

■ Defendants further argue in their motion that plaintiff failed to offer legally adequate evidence of its delay damages, in particular, the extent to which its actual costs were increased by the improper acts by MMCC.

The law is well settled that a "subcontractor's damages for delay in construction cases are measured as a general matter by 'the extent to which its costs were increased by the improper conduct, and its recovery will be limited to the damages actually sustained.'" *Thalle Constr. Co. v. The Whiting–Turner Contracting Co.*, 39 F.3d 412, 417 (2d Cir.1994) (quoting *Peter Scalamandre & Sons, Inc. v. Village Dock, Inc.*, 187 A.D.2d 496, 589 N.Y.S.2d 191 (2d Dep't 1992)).

There are several methods for calculating these damages. The most precise method is to trace particular cost items back to the delay caused by defendants. *Id.* Because this can be difficult, a more common method is the "total cost method" which requires the finder of fact to determine total delay damages, *i.e.*, the difference between the contract price and the total job costs, and then apportion the total damages based on responsibility for the delay. *Id.* (quoting *Wolff & Munier, Inc. v. The Whiting–Turner Contracting Co.*, 946 F.2d 1003 (2d Cir.1991)).

Defendants contend that plaintiff failed to offer adequate proof on the measure of its delay damages, and that the jury failed to allocate the responsibility for the delay. Plaintiff responds by relying on the testimony of its expert, Alverson.

DeLello testified as to the cause of Evergreen's delays, and generally as to the additional costs incurred. This testimony provided a basis for apportioning the damages, and buttressed the testimony of Alverson. Alverson testified in detail about Evergreen's damages due to delay caused by MMCC. Alverson described three categories of delay damages—equipment standby, extended field costs and extended general costs. He calculated Evergreen's total damages due to delay as $184,032. Alverson explained the basis for this amount, including the standard industry rates for construction equipment set by the New York State Department of Transportation, the additional costs for personnel, telephones, and so forth.[7]

---

part on plaintiff's delay claim, then answer the following questions:
Is the "no damage for delay" clause of the Subcontract invalid because the delay was:

  a.  not contemplated by the parties at the time of the agreement?

      Yes___ No___

  b.  caused by Merritt–Meridian's bad faith, or its willful, malicious, or grossly negligent conduct?

      Yes___ No___

  c.  so unreasonable that it constituted an intentional abandonment of the contract by Merritt–Meridian?

      Yes___ No___

  d.  the result of a fundamental breach of the contract by Merritt–Meridian?

      Yes___ No___

7. Defendants' argument that plaintiff's expert's opinions are "inadequate" because he "simply recited his opinion, based upon documents not in evidence" (Mem. in Supp. of Def. Renewed Motion at 10), must be rejected. First, many of the documents were received in evidence. Second, although many of the documents upon which the expert relied admittedly were not received in evidence, both Rules 703 and 705 of the Federal Rules of Evidence contemplate the possibility that the "underlying facts or data" are not received in evidence. Third, as I recall, I only permitted Alverson to testify based on documents that had been produced to defendants during discovery.

Furthermore, the jury charge made it clear that delay damages were only for costs actually sustained by Evergreen and caused by MMCC. I charged the jury that "[i]f you find in favor of Evergreen on any or all of its delay claims, you may award Evergreen damages for additional costs it proves were incurred as a result of delays ... caused by [MMCC]." I further cautioned the jury to "not engage in speculation or guess-work; Evergreen must have provided you with a sufficient basis for making a reasonable calculation of damages."

I find that the testimony of Alverson and DeLello, when viewed as it must be in a "light most favorable to the non-movant," *Samuels,* 992 F.2d at 16, does provide a legally adequate basis for awarding plaintiff $157,302 for its delay damages caused by MMCC. Alverson calculated the delay damages to be $167,302 and added a 10% profit for a total of $184,032. The jury's award of $157,302 is well within Alverson's calculations. Therefore this part of defendants' motion is also denied.

### c. *Plaintiff's Alleged Breach*

Defendants contend that the only reasonable conclusion the jury could have reached was that Evergreen, and not MMCC, had materially breached the Subcontract. I disagree. As noted above, there is substantial evidence in the record to support the jury's findings that MMCC failed to pay Evergreen for work performed and that MMCC breached its duty to deal with Evergreen in good faith. Likewise, the jury was entitled to find, on the evidence presented, that Evergreen did not breach its contractual obligations to MMCC. To prevail on its counterclaim, MMCC had to prove, among other things, that it substantially performed its part of the bargain or that it was ready, willing and able to do so; it is apparent that the jury found

that MMCC had failed to prove this element of its claim.[8]

One reduction, however, should be made in the jury's award. Alverson testified that Evergreen's claim against MMCC should be reduced by $30,398 to account for MMCC's cost to complete the Project. MMCC should be given a credit for this amount that Evergreen essentially conceded was due MMCC. Defendants argue that a new trial should be held on the amount of the completion costs, for the record contained evidence that the completion costs were in excess of $300,000. Alverson's testimony with respect to plaintiff's damages, however, was clearly accepted by the jury, whereas the testimony of MMCC's witnesses was rejected.[9] Moreover, the jury found that there was no breach on the part of Evergreen, and thus there is no basis for another trial. Under these circumstances, I will limit this credit to $30,398.

### 2. *The Motion for a New Trial*

An error of law, if prejudicial, may be grounds for a new trial under Fed.R.Civ.P. 59(a). *See* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2805 (1973). But "[n]o error in either the admission or the exclusion of evidence ... is ground for granting a new trial ..., unless refusal to take such action appears to the court inconsistent with substantial justice." Fed.R.Civ.P. 61.

A motion for a new trial on the basis of the weight of evidence may not be granted unless the jury's verdict is "seriously erroneous." *Piesco,* 12 F.3d at 344–45. A trial court may refrain from setting aside a verdict and ordering a new trial "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363

8. The jury was asked the following question in the Special Verdict Sheet:
  7. Do you find by a preponderance of the evidence that Evergreen materially breached the Subcontract with Merritt–Meridian?
  Yes___ No___

The jury answered the question "No."

9. DX 6026 set forth MMCC's cost-to-complete calculations. Those included the same grossly inflated equipment charges (*e.g.,* $600 per day for a John Deere 792) that the jury obviously rejected.

**1224**

(2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993).

### a. *Punitive Damages*

■ Defendants argue that it was prejudicial error to permit plaintiff to introduce evidence on its claim for punitive damages. Defendants first attacked the punitive damages claim in their motion for partial summary judgment. On October 1, 1991, Judge Goettel dismissed plaintiff's sole tort claim but declined to dismiss the punitive claims, stating that "where the moral culpability of the breacher is at issue, punitives can be awarded, even if the underlying claim is based on a breach of contract." (Mem.Dec. at 13 n. 3).

As part of their motion in limine, defendants moved to dismiss the punitive damages claim under this Court's general discretionary power to review and revise its prior rulings. I declined to dismiss the claim. My reasons for allowing plaintiff to proceed with the punitive damages claim were twofold: First, Judge Goettel's prior ruling was the law of the case and I was not presented with authority indicating that this ruling was clearly wrong and should be upset. Second, counsel for plaintiff had argued that MMCC's conduct in connection with the Subcontract evinced a "criminal indifference" to contractual rights, and that there was a "public interest" in preventing this type of conduct. (10/15/94 Tr. at 28–29).

After the close of all of the evidence, and upon the motion of defendants, I dismissed plaintiff's punitive damages claim as I found that it had failed to present a legally sufficient evidentiary basis for a reasonable jury to conclude that public rights were implicated in its claims or that MMCC engaged in conduct aimed at the public generally. *See Brink's, Inc. v. City of New York,* 717 F.2d 700, 704 (2d Cir.1983) (citing *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 358, 353 N.E.2d 793, 795, 386 N.Y.S.2d 831, 833 (1976)); *Durham Industries, Inc. v. North River Ins. Co.,* 673 F.2d 37, 41 (2d Cir.), *cert. denied,* 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982). I do not believe that my refusal to dismiss plaintiff's punitive damages claim before trial warrants a new trial. *See* Fed.R.Civ.P. 61.

Defendants submit that plaintiff's presentation of its evidence "was strongly tinged with the punitive theme," and improperly incited the jury to punish defendants. (Def.Mem. at 17). Defendants focus particular attention on plaintiff's use of MMCC's profit on the Project, and argue that this "evidence was deemed to be relevant largely if not exclusively because of the presence of Plaintiff's punitive damages claim, and was highly prejudicial to MMCC." *Id.*

Defendants' arguments are rejected. First, the evidence of MMCC's profit was relevant because it supported plaintiff's claim that MMCC did not pay Evergreen for work that Evergreen did for which MMCC received payment from the Army Corps of Engineers. In other words, as Evergreen argued, the fact that MMCC exceeded its original expectations with respect to profit is evidence that it got away without paying Evergreen.

Second, proof of bad faith and malice were relevant in respects other than punitive damages. Plaintiff alleged, among other things, that MMCC breached the Subcontract by failing to deal in good faith and that the "no damage for delay" clause of the Subcontract was invalid due to MMCC's bad faith and willful, malicious conduct. Hence, I overruled defendants' objections and admitted evidence that was relevant to these claims of bad faith and fraud, that also was relevant to the issue of punitive damages. This evidence included: MMCC's handling of the confession of judgment and promissory note; MMCC's inflation of the backcharges; MMCC's receipt of payment for Evergreen's work and refusal in turn to pay Evergreen; and Dennis Capolino's purported statement when negotiating the backcharges that DeLello could try to litigate but that MMCC would tie him up for years.

On the other hand, I granted defendants' objections and refused to admit evidence that was relevant *only* to the punitive damages claim. This included evidence of MMCC's profits from other construction projects, its annual revenues, its total size and assets, and the Capolino family's annual income and total net worth. I held that plaintiff would be able to present this evidence only after the jury

ruled on liability, and only if the jury found in favor of plaintiff on liability. Of course, we did not get that far because I dismissed the punitive damages claim at the close of the evidence.

Hence, defendants' arguments of prejudice are without merit.

### b. *The Weight of the Evidence*

Defendants request that if the Court does not enter judgment in their favor as a matter of law, a new trial should be ordered on the issues of plaintiff's alleged breach and its delay and extra work claims. Additionally, defendants request a new trial on the issue of the enforceability of the promissory note.

Defendants state that "[t]his Court should grant a new trial because the jury reached a seriously erroneous result and the verdict is a miscarriage of justice." (Def.Mem. at 20). I disagree.

On the basis of the evidence in the record discussed above, I find that the jury's findings on the Plaintiff's claims of extra work, delay damages, breach of contract and on the validity of the promissory note were not "seriously erroneous." *Piesco*, 12 F.3d at 344–45. There was testimony and documentary evidence offered in support of each of the claims and concerning the note. Moreover, on each of these issues there were conflicts in the testimony that required the jury to make credibility findings. *Metromedia Co.*, 983 F.2d at 363. The jury clearly found the testimony of DeLello and Alverson more credible than that of Dennis Capolino and the employees of MMCC. Accordingly, defendants' motion for a new trial is denied.

### B. *Evergreen's Cross–Motion*

Evergreen cross-moves for prejudgment interest and attorneys' fees and costs. Plaintiff also moves for an order granting it judgment on the $80,000 promissory note and compelling MMCC to enter a satisfaction of the award based on the confession of judgment MMCC entered in the Dutchess County court against Evergreen.

### 1. *Prejudgment Interest*

Plaintiff seeks prejudgment interest on the damages awarded by the jury. The injuries for which the jury awarded Evergreen damages were sustained in 1987 and 1988. The Supreme Court has recognized the time value of money, and noted that money received today for services provided previously is not equivalent to the same dollar amount had it been received at the time the services were provided. *Missouri v. Jenkins*, 491 U.S. 274, 283, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). For this reason, the Supreme Court has held that prejudgment interest is an element of complete compensation. *West Virginia v. United States*, 479 U.S. 305, 310, 107 S.Ct. 702, 706, 93 L.Ed.2d 639 (1987); *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655–56, 103 S.Ct. 2058, 2062–63, 76 L.Ed.2d 211 (1983). Thus, Evergreen is entitled to an award of prejudgment interest on the damages it suffered as a result of MMCC's material breach of the Subcontract.

Interest will be awarded to plaintiff on the sum of $589,036.51 (the jury's award of $619,434.51 less a credit for completion costs of $30,398) at the rate of 9% per annum from July 12, 1988, which is 60 days after the last day plaintiff performed work on the project.

As of today, interest will have accrued in the amount of $370,220.88.[10]

### 2. *Attorneys' Fees and Costs*

Evergreen also seeks a determination by this Court of the amounts of attorneys' fees and costs to be awarded pursuant to Judge Goettel's July 1993 Decision. Additionally, Evergreen moves for an award of its attorneys' fees and costs for the entire litigation based on: (1) Fed.R.Civ.P. 11; (2) 28 U.S.C. § 1927; and (3) the "inherent power" of this Court to make such an award.

### a. *The July 1993 Decision*

In his July 1993 Decision from the bench, Judge Goettel dismissed MMCC's sec-

---

**10.** This total was calculated as follows: $589,036.51 multiplied by the annual rate of 9% gives an annual amount of $53,013.29, which gives a daily rate of $145.24 when divided by 365 days; the annual amount multiplied by 6 for the six years from July 12, 1988 through July 11, 1994, plus the daily rate multiplied by 359 for the number of days from July 12, 1994 through July 6, 1995.

ond counterclaim and awarded Evergreen attorneys' fees with costs and expenses because "it appears that there is merit to plaintiff's contention that the defendants brought the counterclaim solely for purposes of harassing plaintiff...." (7/2/93 Tr. at 9). Judge Goettel did not, however, set the amount to be awarded, as he ruled that the determination of the "actual amount to be set" would be held "in abeyance" until the "final disposition" of the case. (*Id.* at 9).

### b. *Recovery of Fees Against General*

Evergreen argues that both General and MMCC should be held accountable for its fees and costs under the July 1993 Decision because Judge Goettel, in rendering his decision, referred to defendants in the plural.[11] (Cahill Affid. dated 1/3/95 at ¶ 10). General argues that the July 1993 Decision must logically be restricted to MMCC.

Although both defendants were represented by Steven O'Hare, Esq., at the time and he consistently signed pleadings as "Attorney for Defendants," the second counterclaim clearly was brought on behalf of MMCC and *not* General.[12] General was simply the construction bond surety and had no direct dealings with Evergreen. Judge Goettel's order should be given its common sense meaning; the July 1993 Decision will be read as imposing costs and fees against MMCC only.

### c. *Evergreen's Fees and Costs Under Judge Goettel's Decision*

▮ The next issue is the amount of fees and costs Evergreen should be awarded pursuant to Judge Goettel's July 1993 Decision.

---

11. In contrast, TPI looks only to MMCC for recovery of its fees and costs incurred in defending the second amended third-party complaint.

12. Paragraph 18 of the second counterclaim alleges a "scheme to defraud Defendant, Merritt Meridian Construction Corp., ... and thereby to deprive defendant, Merritt Meridian Construction Corp., of its money and property." Paragraph 23 of the second counterclaim alleges that "defendant Merritt Meridian Construction Corp. has suffered great loss[es]" as a result of the alleged conspiracy.

13. Rule 11 presently reads, in pertinent part:

---

▮ Rule 11 was amended on April 22, 1993, effective December 1, 1993. Since the conduct at issue occurred and Judge Goettel made a finding that Rule 11 was violated prior to the effective date of the 1993 amendments, the pre-December 1, 1993 version of Rule 11 applies. *See Sussman v. Bank of Israel,* 56 F.3d 450 (2d Cir.1995) ("pre–1993 version of Rule 11" applied, where conduct in question occurred in 1991). The relevant portion of the pre-December 1, 1993 version of Rule 11 provided:

> If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11 (as amended up to but not including April 22, 1993).[13]

The amount of attorneys' fees to be awarded as a Rule 11 sanction is a matter "committed to the discretion of the district court." *Caisse Nationale de Credit Agricole–CNCA v. Valcorp, Inc.,* 28 F.3d 259, 266 (2d Cir. 1994). In determining the amount of a "reasonable" attorneys' fee award, a court must remember that "the principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses." *Id.* Because the gener-

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into the court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.
>
> Fed.R.Civ.P. 11 (as amended through and including 1993).

al American rule is that a prevailing party cannot recover attorneys' fees, *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975), the courts must be mindful that:

> Rule 11 is not a fee-shifting mechanism and does not create an entitlement in adverse parties to compensatory damages or attorney's fees.... Rather it is intended "to maintain the integrity of the system of federal practice and procedure."

*Estate of Calloway v. Marvel Entertainment Group*, 9 F.3d 237, 241 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1829, 128 L.Ed.2d 459 (1984) (*quoting Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 552, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991)). Hence, the Second Circuit has held that the "lodestar amount need not be routinely awarded" and "a fee substantially less than the lodestar amount is permissible" when courts are setting the amount of Rule 11 sanctions. *Eastway Constr. Corp. v. City of New York*, 821 F.2d 121, 122–23 (2d Cir.), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). Moreover, Rule 11 sanctions do not "shift the entire cost of litigation; they shift only the cost of a discrete event." *Business Guides, Inc.*, 498 U.S. at 553, 111 S.Ct. at 934. The courts should exercise their discretion "to award only that portion of a defendant's attorney's fee thought reasonable to serve the sanctioning purpose of the Rule." *Eastway*, 821 F.2d at 123.

Applying these principles to the present case, I believe Evergreen should be awarded $35,000 in fees from MMCC.

First, Judge Goettel's July 1993 decision clearly applied only to certain of MMCC's counterclaims and third-party claims; his ruling did not apply to the entire litigation. Indeed, in granting defendants' motion to dismiss the *second* counterclaim, Judge Goettel stated:

> Because it appears there is merit to plaintiff's contention that the defendants *brought the counterclaim* solely for purposes of harassing plaintiff, the plaintiff's request for attorneys' fees with costs and

expenses [is] granted but the actual amount to be set will be held in abeyance till the final disposition of this litigation. (7/2/93 Tr. at 9) (emphasis added).

Second, the sanctionable conduct here is not the entire litigation; rather, the "discrete event" is the second counterclaim. *See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. at 553, 111 S.Ct. at 934.

Third, while Evergreen is not entitled to an award equivalent to the lodestar amount, nevertheless it would be useful to know the lodestar amount of the services necessarily and reasonably incurred as a result of the second counterclaim. Unfortunately, Evergreen has made no effort to break out that amount. The record does show, however, that Evergreen incurred $100,645.33 in "legal fees"[14] between the filing of the amended counterclaim and the July 1993 Decision. (Affid. of J. DeLello, dated 6/30/93, attached as Exh. E to the Cahill Affid. dated 12/16/94). Some of those fees clearly were attributable to work unrelated to defending the second counterclaim, including the preparations for and conducting of the summary jury trial, during which MMCC did not attempt to prove its claim of malicious conspiracy. (*See* 7/2/93 Tr. at 7) ("there was no mention of this counterclaim" in the summary jury trial). While certain discovery was required by the second counterclaim, as Judge Goettel observed, "the actual amount spent exclusively on discovery relating to the second counterclaim is debatable." (7/2/93 Tr. at 7). Nonetheless, substantial legal costs were involved in defending the serious charges contained in the second counterclaim, but those costs necessarily amount to some percentage of $100,645.33. After reviewing the timesheets submitted by Evergreen's attorneys, I would estimate that the fees actually attributable to the second counterclaim would be less than 50% of that amount.

Fourth, in my view MMCC certainly deserves to be sanctioned. The second counterclaim, which sought $100 million in purported damages resulting from an alleged scheme to defraud MMCC, was patently friv-

14. It is not clear whether this was attorney time exclusively, or time plus expenses.

olous and was undoubtedly asserted "solely for purposes of harassing plaintiff." (7/2/93 Tr. at 9). The evidence at trial confirmed that MMCC, and Dennis Capolino in particular, sought to use the judicial process to disadvantage Evergreen. Indeed, the unrebutted testimony was that Capolino said to DeLello "sue me" and "[i]t would take you a hundred thousand dollars to retain an attorney" and "I'll tie you up for six years."

Finally, the amount awarded should be high enough to deter MMCC and others from making frivolous filings and asserting baseless claims. It should be noted in this respect that MMCC made a profit of some $2 million from the Project.

Taking all of these factors into account, I believe that an award of $35,000 in fees against MMCC in favor of Evergreen would fairly implement Judge Goettel's July 1993 decision and carry out the purposes of Rule 11.[15]

### d. Evergreen's Request for Additional Sanctions

█ Evergreen also seeks sanctions against MMCC and General under Rule 11, the Court's inherent power and 28 U.S.C. § 1927. The request is denied. There is no basis for an award of attorneys' fees beyond what I have already ordered. MMCC and General did not act unreasonably or vexatiously by deciding to defend the lawsuit or to assert counterclaims. After all, Evergreen left the job (albeit justifiably, in the jury's view), and clearly there were deficiencies in certain aspects of Evergreen's work (although, again in the jury's view, many of these deficiencies resulted from MMCC's actions). Indeed, the Corps complained repeatedly and at one point halted the blasting because Evergreen was not complying with Corps regulations. Moreover, Evergreen let its insurance lapse, and it is undisputed that MMCC was forced to provide its own workers and equipment to Evergreen because of difficulties Evergreen encountered on the job. Finally, defendants were successful in their defense in one significant respect:

plaintiff's claim for punitive damages. At the close of the evidence, I dismissed the claim for punitive damages on the basis that plaintiff was not entitled, on the record before me, to punitive damages as a matter of law.

Notwithstanding the jury's finding of bad faith on the part of MMCC in its dealings with Evergreen in 1987 and 1988, defendants were entitled to defend the action and I cannot say that they acted in bad faith by refusing to "roll over" once Evergreen bought suit.

### e. Evergreen's Bill of Costs

Evergreen has also submitted a proposed bill of costs. I will allow items 1, 2 and 3 in their entirety; they total $458.90. With respect to item 5, I will not allow any process server fees or any 1991 witness fees; I will allow 1994 witness fees in the amount of $429.46, which covers (approximately) the witnesses who actually testified at trial. With respect to item 6, I will allow $5,000, which is my estimate of the cost of photocopying the exhibits offered at trial and other papers submitted by plaintiff in connection with trial. I will not allow items 8 and 10(a) and (c). With respect to item 10(b), I will allow $8,000 for deposition transcripts, which is my estimate of the cost of depositions actually used at trial (e.g., for impeachment purposes).

Accordingly, the total awarded in favor of plaintiff for costs is $13,888.36.

### 3. Promissory Note and Confession of Judgment

Evergreen moves pursuant to Fed.R.Civ.P. 59(e) for an order compelling MMCC to enter a satisfaction of the $106,000 judgment entered against Evergreen in the Dutchess County Clerk's Office. In view of the jury's findings, the application is granted. The judgment will provide that MMCC is ordered to enter a satisfaction of judgment to fully extinguish the judgment in question.

---

15. Lest there be any doubt, all of the sanctionable conduct occurred *prior* to the substitution of Daniel L. Saxe, Esq., into the case as attorney for

defendants. Indeed, at all times Mr. Saxe has conducted himself in the utmost professional manner.

## C. *TPI's Cross–Motion*

In his July 1993 Decision, Judge Goettel dismissed with prejudice the remaining cause of action (for breach of contract) in MMCC's second amended third-party complaint against TPI and also granted its application for fees and costs. (7/2/93 Tr. at 10).[16] He did not at that time set the amount of fees or costs. (*Id.* at 11). TPI now seeks an award of $272,538.12 for attorneys' fees, $42,081.12 in costs, and $172,073.78 in expert consulting fees, for a total award of $486,693.02.

My discussion of Evergreen's requests for attorneys' fees above applies with equal force to TPI's cross-motion. I would add the following:

First, I do not believe that Judge Goettel had a sanction of nearly $500,000 in mind when he issued his July 1993 Decision. Although Judge Goettel did state at that time that "I think that the third-party defendant has submitted adequate proof of its attorneys' fees [so] that no further proceeding will be necessary as to it at the conclusion of trial," clearly he was not holding that TPI was entitled to be reimbursed for all its litigation expenses, as Judge Goettel explicitly deferred a determination of the amount of the award until after trial. (7/2/93 Tr. at 10).

Second, an award of nearly $500,000 in sanctions would improperly convert Rule 11 into a fee-shifting mechanism in this case. Such an award far exceeds what would be necessary to carry out the intent of Rule 11 to deter baseless pleadings.

Third, in any event, a substantial part of TPI's fees and costs were incurred by TPI as it assisted plaintiff in prosecuting its affirmative claims against MMCC. It would not be appropriate for TPI to be reimbursed for these expenses. While it is true, as TPI contends, that these efforts were necessary to substantiate TPI's set-off defense against MMCC's third-party claim, TPI was necessarily involved as Evergreen's surety. Moreover, MMCC's claim that Evergreen breached the Subcontract was not frivolous, and thus TPI was arguably potentially liable as Evergreen's surety. Indeed, TPI never moved to dismiss the breach of contract cause of action in the third-party complaint; that cause of action was dismissed on MMCC's motion. It is not "patently clear" that the breach of contract cause of action had "absolutely no chance of success." *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985).

Finally, the $1,000 sanction imposed on Steven O'Hare deserves mention. It was assessed solely against O'Hare and solely with respect to the RICO claim. It does not preclude a further award now against MMCC. It does, however, suggest that Judge Goettel did not have $500,000 in mind.

In any event, taking into account all of these considerations as well as the considerations discussed above with respect to Evergreen's application, I believe an award substantially above $1,000 but substantially below $486,693.02 would be appropriate to carry out the purposes of Rule 11, and I will grant TPI's application to the extent of $50,000.

### *Conclusion*

Defendants' motion for judgment as a matter of law is denied, except to the extent that the amount awarded by the jury will be reduced by $30,398. Defendants' alternative motion for a new trial is denied. Evergreen's cross-motion is granted to the extent that it is awarded $370,220.88 in prejudgment interest, attorneys' fees in the amount of $35,000, costs in the amount of $13,888.36, and an order requiring MMCC to file a satisfaction of judgment. TPI's cross-motion is granted to the extent that it is awarded attorneys' fees and costs of $50,000.

Hence, judgment will be entered (a) in favor of Evergreen against MMCC and General in the amount of $973,145.75, consisting of (i) $589,036.51 on its breach of contract claim, (ii) $370,220.88 in prejudgment interest, and (iii) $13,888.36 in costs; (b) in favor

---

**16.** Although Judge Goettel stated that he was dismissing "the third party-complaint" (7/2/93 Tr. at 9), at that point he was only dismissing Count 1, which was then the only count remaining in the third-party complaint, since the other counts had been dismissed by his June 22, 1992 order adopting Magistrate Judge Fox's Report and Recommendation. (*Id.* at 3).

of Evergreen against MMCC in the amount of $35,000 in attorneys' fees; (c) in favor of Evergreen against MMCC ordering MMCC to file a satisfaction in connection with the judgment entered against Evergreen in favor of MMCC in the Dutchess County Clerk's Office; (d) in favor of TPI against MMCC in the amount of $50,000 in attorneys' fees and costs; (e) in favor of MMCC dismissing Evergreen's claims for punitive damages with prejudice; and (f) in favor of Evergreen against MMCC dismissing MMCC's counterclaim with prejudice.

SO ORDERED.