**In re 680 FIFTH AVENUE ASSOCIATES and 54th and Fifth Land Partners, Reorganized Debtors.**

**680 FIFTH AVENUE ASSOCIATES, on its own behalf and as successor-in-interest to 54th and Fifth Land Partners, Plaintiff,**

**v.**

**EGI COMPANY SERVICES INC., Engadine Holdings Inc., 54th Estate Corp., 680 Realty Partners and HFA Investor Services, Inc., Defendants.**

**EGI COMPANY SERVICES INC., Engadine Holdings Inc., 54th Estate Corp., 680 Realty Partners and HFA Investor Services, Inc., Counterclaimants and Third Party Plaintiffs,**

**v.**

**680 FIFTH AVENUE ASSOCIATES, Counterclaim Defendant,**

**and**

**Lodz Properties, L.P., Hensel Fifth Avenue Associates, L.P., Hensel 680 Realty Corp., Farrell C. Galser, J. Michael Broumas, Ober, Kaler, Grimes & Shriver, Steven L. Green, and S.L. Green Real Estate, Inc., Third Party Defendants.**

Bankruptcy Nos. 92 B 44734(TLB) and 92 B 44735(TLB). Adversary No. 95–1395A.

United States Bankruptcy Court, S.D. New York.

Feb. 20, 1998.

Hahn & Hessen L.L.P. by Jeffrey L. Schwartz, Joshua I. Divack, Brown, Raysman & Millstein, L.L.P. by Kenneth M. Block, New York City, for Reorganized Debtor.

Ross & Hardies by Marshall Biel, Kathryn C. Spann, New York City, for EGI Company Services Inc., Engadine Holdings Inc., and HFA Investor Services, Inc.

## OPINION DENYING SANCTIONS

TINA L. BROZMAN, Chief Judge.

Edward M. Strasser, who has moved for an award for sanctions, was the president of the former managing agent and, through a corporate vehicle, controlled the general partner of 680 Fifth Avenue Associates and

its affiliated company, both of which were partnership debtors-in-possession under chapter 11 of the Bankruptcy Code. Together, the two debtors owned and operated a commercial office building in a tony part of Fifth Avenue in Manhattan. Competing plans were filed by Strasser and the limited partners, with the limited partners' plan ultimately being confirmed. Throughout the course of the reorganization cases the enmity flowing between the limited partners and Strasser was almost palpable. Shortly after the limited partners' plan was confirmed, Strasser filed millions of dollars of administrative claims on behalf of entities which he controlled for services said to have been rendered by them during the debtor in possession phase. Although a footnote in Strasser's disclosure statement reserved his right to file claims for these entities, nowhere did the disclosure statement reveal that he intended to do so or that the claims would aggregate some $2 million. The claims were not asserted and their magnitude was concealed until after confirmation of the limited partners' plan.

In response to Strasser's filing of these claims, the Reorganized Debtor (the two debtors having been merged into one pursuant to the plan), under the control of new management installed pursuant to the limited partners' plan, filed a complaint drafted by attorneys new to the proceedings containing ten causes of action against Strasser and his entities, including objections to the claims. Strasser answered and several weeks later moved for (i) partial judgment on the pleadings and (ii) leave to amend his answer to assert a counterclaim and interpose a third-party complaint seeking to revoke confirmation of the limited partners' plan and authorize him to solicit acceptances to a new plan which he would propose. Before the motion was heard, the parties agreed that the reorganized debtor, under the guidance of a still different set of attorneys, could amend the complaint to delete some of the claims and drop some of the defendants, including Strasser. Strasser responded to the amended complaint with an answer asserting the counterclaim and instituting the third party complaint. He simultaneously moved for sanctions pursuant to Fed.R.Bankr.P. 9011 with

respect to the omitted claims. The reorganized debtor and third party defendants promptly moved to dismiss the counterclaim and third party complaint, a motion which I granted. *In re 680 Fifth Ave. Assocs.*, 209 B.R. 314 (Bankr.S.D.N.Y.1997). This decision treats with Strasser's request for sanctions.

It is fairly likely from Strasser's concealment of the magnitude of his entities' administrative claims until after confirmation of the limited partners' plan coupled with his attempt to revoke that plan once confirmed that he was desirous of torpedoing the reorganization by burdening the surviving entity which he no longer controlled with first priority claims which no one had anticipated. (Had he revealed the size of his entities' claims at the time that his own plan was under consideration, it would have made confirmation of that plan very unlikely.)

One of the ten claims in the original complaint represented that Strasser had allowed to expire an agreement tolling the statute of limitations. The assertion was true but incomplete because Strasser had obtained the oral agreement of the committee of unsecured creditors to his inaction. Strasser paints that claim as violative of Fed. R.Bankr.P. 9011. It is not surprising that counsel for the reorganized debtor, arriving on the scene only after confirmation, did not know of the conversations between Strasser and the committee given that the reorganized debtor's management was also new. More comprehensive inquiry would have revealed the flaw in the claim, but counsel's ignorance is understandable. Strasser tags a second claim as sanctionable on the theory that had the reorganized debtor obtained the relief it sought, avoidance of the so-called Oak Tree note, that relief would have greatly harmed the limited partners who had voted in favor of the confirmed plan. However, even if this were true, Strasser fails to demonstrate how this claim was frivolous or was filed for an improper purpose, the ultimate tests for whether a pleading warrants sanctions.

I have concluded that, because both claims and, indeed, the entire complaint, were objec-

tively reasonable and not filed for an improper purpose, sanctions ought not be imposed.

## I.

54th and Fifth Land Partners, the owner of real property located at 680 Fifth Avenue in Manhattan, and 680 Fifth Avenue Associates (54th and Fifth Land Partners and 680 Fifth Avenue Associates are collectively referred to as the "Debtors"), the owner and operator of a 27 story commercial office building located at that address, filed voluntary chapter 11 petitions in late August 1992.

As their reorganization cases progressed, the Debtors encountered difficulty in mustering support for their reorganization proposals. Growing increasingly restless, a group of the limited partners (the "McNamee Group") banded together to attempt to oust 680 Realty Partners (and by extension, Strasser) as the Debtors' general partner. After a period of litigation, the parties reached a truce, whereby the litigation was terminated and the McNamee Group[1] was permitted to file its own plan of reorganization in competition with the Debtors'.

Just about three years after the chapter 11 petitions were filed, I conducted a confirmation hearing to consider the two camps' competing plans. After denying confirmation of the Debtors' plan because they did not have the necessary financing in place for its execution and after refusing their request for an adjournment to yet again seek such financing[2], I confirmed the McNamee Group's plan (the "McNamee Plan").

About a month later, Strasser surprised the parties in interest by filing administrative claims which he had reserved the right to assert but whose magnitude he had not described in the Debtors' disclosure statement for four companies which he controlled ("Strasser Claimants"). These claims, as supplemented, aggregated just under $2 million and were said to be for services rendered to the debtors-in-possession. In addition, the Strasser Claimants asserted $4.2 million in general unsecured claims.[3]

Just after the Strasser Claimants filed their claims, the McNamee Plan became effective. As a result, the property of the Debtors vested in the Reorganized Debtor[4], with the general partners being removed, thereby eliminating Strasser from control and management of the building formerly in the Debtors' possession. The law firms of Kensington & Ressler, L.L.C. and Strasburger & Price, L.L.P. were retained by the Reorganized Debtor.

Represented by those two law firms, the Reorganized Debtor commenced this adversary proceeding by filing a complaint (the "Original Complaint") objecting to the claims of the Strasser Claimants and asserting a number of claims against not only the four Strasser Claimants but also five other parties including Strasser himself and four entities which he controlled, 680 Realty Partners, CRC Realty Capital Corp., HC Financial Service, and Emstra Realty, Inc. (collectively the "Strasser Defendants"). On January 19, 1996, the Strasser Defendants answered the complaint, interposing a number of affirmative defenses including the expiration of the statute of limitations.

---

1. Over the course of time, the members of the McNamee Group increased. Because the actual identities of the members of the group at any particular time is not relevant to the pending motion, for simplicity's sake I will refer to the limited partners who sought to remove Strasser and who filed a plan as the "McNamee Group."

3. The current breakdown of these claims is:

| | | |
|---|---|---|
| HFA Investor Services, Inc. | $ 393,748.08 administrative | |
| EGI Company Services, Inc. | $1,257,554.80 administrative | |
| 54th Estate Corporation | $ 87,369.86 administrative | $1,125,000.00 general unsecured |
| 680 Realty Partners | $ 216,424.66 administrative | $3,075,000.00 general unsecured |

4. On the effective date, 54th and Fifth Land Partners was merged into 680 Fifth Avenue Associates, which survived reorganization.

2. The Debtors had filed five earlier plans and had just under three years to secure financing. During all this time they made no discernible progress in their endeavor to obtain financing.

During a pretrial conference, I asked the Reorganized Debtor's counsel, Michael J. Venditto of Strasburger & Price, L.L.P., about the statute of limitations defense contained in the answer. Venditto replied that he believed that a tolling agreement was in effect which made the action timely. However, no tolling agreement pertaining to that time period has ever been produced.

The Strasser Defendants moved to dismiss the Original Complaint, for partial judgment on the pleadings and for leave to amend their answer to assert a counterclaim and third party complaint against the Reorganized Debtor and the other third-party defendants. Two forms of relief, damages and equitable remedies, were requested, the latter to include injunctive relief, revocation of the order confirming the McNamee Plan and resolicitation of creditors to vote on a new plan supported by the former Debtors (that is, Strasser). Sometime afterward, the Reorganized Debtor retained substitute counsel, the firm of Hahn & Hessen L.L.P., to replace Strasburger & Price, L.L.P. and Kensington & Ressler, L.L.C.

Substitute counsel served an amended complaint modifying the relief requested in the Original Complaint and abandoning most of the claims seeking an affirmative recovery against four defendants including Strasser (the "Amended Complaint"). The Strasser Defendants duly filed their answer to the Amended Complaint, asserting a counterclaim against the Reorganized Debtor and a third-party complaint against a host of defendants, including the law firm of Ober, Kaler, Grimes & Shriver ("Ober Kaler"), counsel to the McNamee Group, and two of its current or former members, Farrell C. Glasser and J. Michael Broumas; Lodz Properties, L.P. ("Lodz"), the assignee of the senior note and mortgage encumbering the building and the senior secured lender of the Reorganized Debtor; Hensel Fifth Avenue Associates, L.P., the general partner of the Reorganized Debtor; Hensel 680 Realty Corp., the general partner of Hensel Fifth Avenue Associates, L.P.; S.L. Green Real Estate Inc., the manager of the Reorganized Debtor; and its principal Steven L. Green, who is also the president of Hensel 680 Realty Corp. Simul-taneously, the Strasser Defendants moved for sanctions against the Reorganized Debtor and its counsel based on allegations made in the Original Complaint and the apparent misstatement to me by Venditto when he was asked about the statute of limitations defense. The Reorganized Debtor and each of the third party defendants responded to the counterclaim and third party complaint with a motion to dismiss, which I granted. The Reorganized Debtor, supported with affidavits of Venditto and Fine, responded to the sanctions motion.

## II.

The Strasser Defendants characterize the Original Complaint as a step in the Reorganized Debtor's war to force them to surrender without litigating the merits of the substantial administrative claims which they asserted. Under the guidance of its two lead attorneys, Messrs. Venditto and Fine, who are alleged to be driven by hatred of Strasser, the Reorganized Debtor is said to have filed the Original Complaint without its counsel first having reviewed the factual bases therefor and determining that the legal theories were viable. The Strasser Defendants point to the stark changes between the Original Complaint signed by Messrs. Venditto and Fine and the Amended Complaint filed by Hahn & Hessen as evidence that, at a minimum, the causes of action pleaded in the Original Complaint but dropped from the Amended Complaint were not properly pleaded or well-grounded in either fact or law. The Strasser Defendants also argue that because Strasser, with the concurrence of the creditors' committee, allowed the statute of limitations on the possible claims against his affiliates to expire, that those claims were time-barred and their assertion is sanctionable. Finally, the Strasser Defendants claim that the Reorganized Debtor sought to avoid a mortgage as a fraudulent conveyance and to recover as much as $100 million from the Strasser Defendants, which they believe is clearly proof of the Reorganized Debtor's intent to use the complaint to harass them and exact revenge.

The Reorganized Debtor, Fine and Venditto respond that the Original Complaint was filed only after the Reorganized Debtor, together with S.L. Green Real Estate, its managing agent, conducted a post-confirmation review of the activities of the Strasser Defendants during the period of their control over the building. The investigation uncovered numerous alleged instances of fraud, self-dealing and mismanagement said to be sufficient to support the allegations and causes of action contained in the Original Complaint. The Reorganized Debtor, Fine and Venditto stress that none of them had a secret agenda to use the Original Complaint as a vendetta against the Strasser Defendants, but only sought to vindicate the rights of the Reorganized Debtor.

### III.

#### A. Due Process Concerns

■■■ Parties facing the imposition of sanctions under Fed.R.Bankr.Proc. 9011 ("Bankruptcy Rule 9011"), 28 U.S.C. § 1927 or the inherent power of the court are protected by the due process clause of the Fifth Amendment. *See, e.g., Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766–67, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); *Klein v. Ulster Savings Bank (In re Stein)*, 127 F.3d 292, 294 (2d Cir.1997). In their motion the Strasser Defendants do not mention which attorney or attorneys at either Strasburger & Price or Kensington & Ressler they are targeting for sanctions. Instead, the papers simply refer to the Reorganized Debtor "and its counsel." In *Roadway Express*, the Supreme Court advised that sanctions should not be assessed lightly or without fair notice and an opportunity for a hearing on the record. *Roadway Express*, 447 U.S. at 767, 100 S.Ct. at 2464. For notice to be fair, it must be sufficiently specific so as to provide the party to be sanctioned an opportunity to prepare and respond. *Klein v. Ulster Savings Bank*, 127 F.3d at 295 (citing cases). In this regard, it is arguable that the motion papers are deficient. However, at the time this motion was brought the Supreme Court had already decided that under the version of Fed.R.Civ.P. 11 then in effect and which is the analog to the version of B.R. 9011 which applies here that only those attorneys who signed a sanctionable paper may be sanctioned; the law firm may not be held responsible. *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 124, 110 S.Ct. 456, 459, 107 L.Ed.2d 438 (1989). Because Fine and Venditto were the two attorneys who had signed the complaint, in light of the *Pavelic* decision it was implicit that they were the targets of the sanctions motion. Nonetheless, it is unnecessary to determine whether sanctions could be assessed against the two attorneys because, even if permissible, as is explained below, sanctions are not warranted.

#### B. Sanctions under Bankruptcy Rule 9011

The drafters of Bankruptcy Rule 9011 have revised it on a number of occasions. Up until December 17, 1993, the language of this rule mirrored that of its civil procedure counterpart, Fed.R.Civ.P. 11 ("Rule 11"). However, effective that date Congress amended Rule 11 without making identical changes to Bankruptcy Rule 9011. *In re 72nd St. Realty Associates*, 185 B.R. 460, 470 (Bankr.S.D.N.Y.1995). The dichotomy between the two rules existed until December 1, 1997, when the bankruptcy rule was amended to conform in most material respects to the civil procedure rule. Which version of Bankruptcy Rule 9011 applies here is important, for the earlier version does not contain the so-called "safe harbor" of Fed.R.Civ.P. 11 by which timely withdrawal of an offending pleading insulates the pleader from sanctions.

■ The case law suggests that the propriety of sanctions should be gauged by the standard in effect at the time the alleged offensive conduct occurred. *Corporate Printing Co., Inc. v. New York Typographical Union No. 6*, 886 F.Supp. 340 (S.D.N.Y. 1995); *see also MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253 (2d Cir.1996) (pre-amended rule applies to allegedly sanctionable conduct that occurred prior to effective date of 1993 amendments); *Sussman v. Bank of Israel*, 56 F.3d 450, 456 (2d Cir.), *cert. denied sub nom. Bank of Israel v. Lewin*, 516 U.S. 916, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995) (pre-amended rule applies

to action filed in 1991 and decided in 1994). Consequently, the rule as it existed prior to the December 17, 1993 amendment is controlling.

■ The key to Bankruptcy Rule 9011 sanctions is the certification flowing from the signature to a pleading, motion or other paper in a lawsuit. Sanctions may be imposed either on the attorney who signs the paper, or on the party the attorney represents, or on both. *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 124, 110 S.Ct. 456, 459, 107 L.Ed.2d 438 (1989).

■ In *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985), which held that an objective rather than subjective standard governs the imposition of sanctions on attorneys, the Second Circuit developed a two-part analysis based on the "frivolous" and "improper purpose" clauses contained in Rule 11. *See Quadrozzi v. New York*, 127 F.R.D. 63, 78 (S.D.N.Y.1989). The first test is whether, after reasonable inquiry, a competent attorney could form a reasonable belief that the pleading is well grounded in fact and warranted by existing law or contains a good faith argument for the extension, modification or reversal of existing law. This clause imposes an affirmative obligation on the signer "to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway*, 762 F.2d at 253 (2d Cir.1985). The rule is violated "where it is patently clear that a claim has absolutely no chance of success." *Id.* at 254. The second test is whether the pleading was interposed for an improper purpose such as harassment or delay. Under the objective standard, a court should impose sanctions whenever a pleading has been "interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Id.* at 254.

■ More recently, in *Sussman v. Bank of Israel*, 56 F.3d at 457–59, the Second Circuit explored whether a court could properly impose sanctions on an attorney for the filing of a well-grounded complaint where the plaintiffs had an improper purpose in filing it. Courts have disagreed about that question, but the Second Circuit adopted the Ninth Circuit's reasoning to hold that a complaint is not filed for an improper purpose if it is not frivolous. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1361 (9th Cir.1990) (en banc) ("it would be counterproductive to use Rule 11 to penalize the assertion of nonfrivolous substantive claims, even when the motives for asserting those claims are not entirely pure"). Further, the Second Circuit stated that because the signer's conduct is to be measured at the time of the signing, the court must avoid hindsight and resolve all doubts in favor of the signer. *Sussman v. Bank of Israel*, 56 F.3d at 457 (citing *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985); *Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir.1986), *cert. denied sub nom. Suffolk County v. Graseck*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987)). Accordingly, a court must look to the objective reasonableness of an attorney's actions under the circumstances known to him or her at the time the questionable document was signed. *Quadrozzi*, 127 F.R.D. at 78. The proper test of objective reasonableness entails considering what a reasonably competent attorney would believe. *Greenberg v. Hilton Int'l Co.*, 870 F.2d 926, 934 (2d Cir.1989).

■ Whereas an attorney will be held responsible if he or she files an objectively unreasonable complaint, the client will not necessarily be culpable. The interplay between the wrongful conduct of the attorney and the attorney's client was resolved in this circuit in *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452 (2d Cir.1988). There the court explained:

"We believe that a party represented by an attorney should not be sanctioned for papers signed by the attorney unless the party had actual knowledge that filing the paper constituted wrongful conduct, e.g. the paper made false statements or was filed for an improper purpose...."

We believe that where a represented party either did not knowingly authorize or participate in the filing of a paper that

violated Rule 11, sanctions against that party are not appropriate. We further believe that when a party has participated in the filing of a paper signed by the attorney or has signed a paper himself but did not realize that such participation or signing was wrongful, then sanctions against the party are also not appropriate.... Where the attorney fails to advise an unwary client of the wrongfulness of such conduct, the burden of sanctions should fall entirely upon the attorney.

Of course, where the party does know that the filing and signing is wrongful and the attorney reasonably should know, then sanctions against both are appropriate. "Where a party misleads an attorney as to facts or the purpose of a lawsuit, but the attorney nevertheless had an objectively reasonable basis to sign the papers in question, then sanctions on the party alone are appropriate."

854 F.2d at 1474–75 (citations omitted).

As is apparent from this discussion, the first focus must be on the Original Complaint itself. To better understand the Strasser Defendants' charges against the Reorganized Debtor, Venditto and Fine, it is helpful to contrast the Original and Amended Complaints. In the Original Complaint, the Reorganized Debtor pleaded ten causes of action against each of the nine Strasser Defendants:

| Claim # | Cause of Action (against each of the 9 Strasser Defendants) | Relief Sought |
|---|---|---|
| 1. | Breach of fiduciary duty to the Debtors. | Accounting by Defendants for all damages caused to partnership. |
| 2. | Breach of fiduciary duty to the Debtors. | Money damages from Defendants. |
| 3. | Defendants breached fiduciary duty to the Debtors' partners by entering into various business transactions to benefit Strasser personally and preserve his position of control. | Accounting by Defendants for damages caused to partnership. |
| 4. | Defendants breached fiduciary duty to the Debtors' partners by entering into various business transactions to benefit Strasser personally and preserve his position of control. | Money damages from Defendants. |
| 5. | Defendants were mediate transferees of voidable transfer of Debtor's conveyance of Oak Tree Note. | Recovery from Defendants of value of indebtedness represented by Oak Tree Note. |
| 6. | Strasser Claims were not timely filed; or if timely filed are deficient because (i) they contain insufficient documentation; (ii) to the extent that they constitute claims by professionals claims do not conform to S.D.N.Y. guidelines for fees; (iii) claims are at best unsecured, not administrative; and (iv) claim amount is disproportionate to actual benefit conferred or services rendered. | Disallowance of claims. |
| 7. | Same grounds as in # 6. | Claims should be subordinated for purposes of distribution. |
| 8. | Strasser Defendants permitted statute of limitations for avoidance actions against Strasser affiliates to expire to the detriment of Debtors. | Tolling the limitations periods of any cause of action asserted in the complaint which otherwise lapsed prior to July 20, 1995. |

| 9. | Strasser Defendants wasted Debtors' assets pursuing confirmation of plan that was not feasible and vigorously contested plan that was confirmed. | Money damages from Strasser Defendants for all legal costs and expenses expended in connection with Debtors' failed plan. |
|---|---|---|
| 10. | Lease assignment from EGI to Engadine for 15th floor was made for no consideration; EGI also received release from all liability under lease for no consideration. Terms of lease are grossly favorable to Engadine and rent is significantly below market. Strasser Defendants violated confirmation order by not granting new general partner access to 15th floor. | Strasser Defendants should be enjoined from further violation of confirmation order. Lease should be deemed rejected by Reorganized Debtor. Any release to EGI should be deemed a preference. Strasser Defendants should pay fair market rental value for 15th floor. |

---

The Amended Complaint was recast in the form of objections to the claims filed by each of the remaining four defendants but also included requests for relief regarding an alleged "sweetheart" lease into which Strasser had entered:

| Claim # | Objection to Claim | Grounds for Disallowance |
|---|---|---|
| 1. | HFA claim (administrative and unsecured) for rejection damages arising from oral contract to render bookkeeping services rendered to Debtor prepetition and postpetition. | Disallowance of claim because claim was not disclosed in Debtor's disclosure statement or objection to McNamee Plan. Additional grounds: prepetition services did not make substantial contribution to estate, or contribute to preservation of estate assets, and postpetition services were not in the ordinary course of business or performed by professional retained pursuant to 11 U.S.C. § 327. |
| 2. | EGI claim (administrative and unsecured) for rejection damages arising from oral contract to provide prepetition and postpetition supplementary management and financial services to Debtor. | Disallowance of claim because claim was not disclosed in Debtor's disclosure statement or objection to McNamee Plan. Additional grounds: services were performed by officers of Debtor and are not compensable, no written agreement exists providing for supplementary services, prepetition services did not make substantial contribution to estate, or contribute to preservation of estate assets, and postpetition services were not in the ordinary course of business or performed by professional retained pursuant to 11 U.S.C. § 327. |
| 3. | 54th Estate Corp. claim (unsecured) for rejection damages arising from partnership management services to 54th and Land Partners. | Disallowance of claim because claim was not disclosed in Debtor's disclosure statement or objection to McNamee Plan. Additional grounds: agreement evinces Strasser's self-dealing, |

| | | |
|---|---|---|
| | | conflict of interest and breach of fiduciary duty; damage amount is for services performed by insider and has no value to estate; duplicative of administrative claim. |
| 4. | 680 Realty Partners (administrative and unsecured) claim for rejection damages arising from partnership management services to 680 Fifth Avenue. | Disallowance of claim because claim was not disclosed in Debtor's disclosure statement or objection to McNamee Plan. Additional grounds: agreement evinces Strasser's self-dealing, conflict of interest and breach of fiduciary duty; damage amount is for services performed by insider and has no value to estate; duplicative of administrative claim. |
| 5. | Lease assignment from EGI to Engadine for 15th floor was made for no consideration; EGI also received release from all liability under lease for no consideration. Terms of lease are grossly favorable to Engadine and rent is significantly below market. Strasser Defendants violated confirmation order by not granting new general partner access to 15th floor. | Strasser Defendants should be enjoined from further violation of confirmation order. Lease should be deemed rejected by Reorganized Debtor. Any release to EGI should be deemed a preference. Strasser Defendants should pay fair market rental value for 15th floor. |

Whereas the Original Complaint had nine defendants, the Amended Complaint has but four. Whereas the Original Complaint contained ten causes of action against each of the nine defendants, the Amended Complaint only objects to the proofs of claim filed by the four Strasser Defendants and seeks, among other things, to oust a Strasser entity from its possession of office space in the Reorganized Debtor's building. Further noteworthy changes include the deletion of Strasser as a defendant and the elimination of three claims: recovery of the value of the indebtedness of the Oak Tree note from Strasser, extension of the limitations period of any cause of action that expired due to the lapsed tolling agreements, and corporate waste in connection with the confirmation hearing.

Plainly, the target of the Original Complaint was Edward M. Strasser. Conceivably, the complaint was designed to induce Strasser to settle or withdraw the administrative claims. This, however, is not necessarily improper if the allegations are based in either law and fact. *See Sussman,* 56 F.3d at 459. However, as the Strasser Defendants see it, the removal of a number of causes of action and elimination of four defendants in the Amended Complaint in response to their motion to dismiss and for partial judgment on the pleadings confirms that those particular claims were not well-grounded in fact or law and were brought for an improper purpose. Accordingly, their argument concludes, the Reorganized Debtor, Venditto and Fine ought be sanctioned.

Venditto and Fine reply to these allegations by recounting the results of their prefiling inquiry, that is, the postconfirmation investigation that led them to believe that the Reorganized Debtor had viable claims against the Strasser Defendants. According to their affidavits, this investigation, including a review by S.L. Green Real Estate of the service contracts and leases of the building and the terms of the tenant leases, turned up a number of questionable transac-

tions which formed the basis of most of the causes of action in the Original Complaint. These questionable items included contracts with service vendors at rates that were allegedly twice the amount of industry standards and a substantially below market lease involving two Strasser entities, EGI Company Services, Inc. and Engadine Holdings Inc. As a result, the Reorganized Debtor concluded that these agreements forced the Debtors to pay above market rates for services they could obtain elsewhere at a much cheaper price which in turn deprived the Debtors of a substantial amount of revenue, much as did the challenged lease.

Based on the prefiling inquiry that Venditto and Fine state was conducted, which has not been seriously controverted by the Strasser Defendants, these factual allegations deal adequately with all of the Original Complaint's abandoned causes of action, except two which I address below. The prefiling inquiry clearly supports the Original Complaint's allegations for breaches by the Strasser Defendants of their fiduciary duty to the Debtors (claims 1 and 2) and to the Debtors' partners and limited partners (claims 3 and 4). The two causes of action which merit closer attention are the fifth and eighth.

In the fifth cause of action, the Reorganized Debtor asserted a claim involving the Oak Tree Note[5], seeking to recover from the Strasser Defendants as mediate transferees the value of the voidable transfers and obligations represented by the note. The Strasser Defendants have long maintained that the Reorganized Debtor commenced this adversary proceeding solely to avoid the Oak Tree mortgage. Their belief that this hidden agenda was tantamount to a fraud by the McNamee Group in achieving confirmation of its plan and the Strasser Defendants' fear of the possible catastrophic tax consequences that would ensue if the note were avoided formed the gravamen of their counterclaims which I dismissed. *In re 680 Fifth Ave. Assocs.*, 209 B.R. 314 (Bankr.S.D.N.Y.1997).[6]

The Reorganized Debtor, Venditto and Fine characterize this cause of action not as an attempt to avoid the Oak Tree Note but to recover damages for an alleged breach of fiduciary duty by the Strasser Defendants. In its responsive papers to this motion, the Reorganized Debtor described how it learned that Strasser utilized a nondebtor entity to sell the Oak Tree Note postpetition to a third party who paid consideration to Strasser directly and agreed to support the Debtors' proposed plan against the McNamee Group's. Therefore, the Reorganized Debtor says, the Strasser Defendants could be liable to the Reorganized Debtor for depriving the Debtors of a valuable partnership opportunity and because of Strasser's profiting personally from the note's sale. Venditto suggests that this claim was pleaded to show another example of Strasser's self-aggrandizing behavior.

However, the pleading simply does not support the Reorganized Debtor's belated rationalization. *See United States v. Interna-*

---

**5.** The parties have argued about this cause of action before. In my opinion dismissing the counterclaims of the Strasser Claimants, I related the history of the Oak Tree Note, *680 Fifth Ave. Assocs.*, 209 B.R. at 314–15, and acknowledged the controversy that exists between the parties concerning what relief the Reorganized Debtor was seeking in the fifth cause of action of its Original Complaint regarding the Oak Tree Note. The Reorganized Debtor argues that the claim alleges that Strasser breached a fiduciary duty to the Debtor. The Strasser Defendants contend that, at the very least, the Reorganized Debtor sought to avoid the Oak Tree note as a fraudulent conveyance. *Id.* at 323 n. 10.

**6.** In its disclosure statement the McNamee Group casts doubt on the validity of the Oak Tree Note and its underlying mortgage by noting that Oak Tree Realty Associates, the alleged owner of the building at 680 Fifth Avenue, did not appear as such in the chain of title. *McNamee Limited Partners Sixth Amended Disclosure Statement pertaining to the McNamee Limited Partners' Sixth Amended Joint Plan of Reorganization* at p. 24. However, although the *bona fides* of the mortgage and note appeared suspect, the McNamee Group demonstrated no interest in contesting their validity; instead, the plan it proposed and successfully confirmed canceled the mortgage and provided for the resulting available tax benefits to be distributed to the limited partners. This distribution was in the form of a potential tax deduction known as "cancellation of debt income," which the McNamee Group described in its disclosure statement as having "considerably" better tax consequences for limited partners than what the Debtors' plan would provide. *McNamee Disclosure Statement*, Article X at p. 64.

*tional Brotherhood of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991). The claim the Reorganized Debtor asserted was plainly an attempt to avoid the note as a fraudulent conveyance. My conclusion is supported by the claim's reference to the Strasser Defendants as "mediate transferees." Try as the Reorganized Debtor might to recharacterize this claim, to recover from the Strasser Defendants as mediate transferees, the Reorganized Debtor would have to prove that the Oak Tree Note itself is voidable. *Santee v. Northwest Nat'l Bank (In re Mako, Inc.),* 127 B.R. 471, 473 (Bankr.E.D.Okla.1991) (recovery of property from any subsequent transferee available only to the extent that the initial transfer has been avoided) (citing *Hassett v. Zimmerman (In re O.P.M. Leasing Services, Inc.),* 32 B.R. 199, 202 (Bankr. S.D.N.Y.1983)).

■ Yet the Strasser Defendants do not articulate what is sanctionable about this particular claim other than the blanket assertion (which they apply to all the claims) that it is time-barred, improperly pleaded, or groundless in either law or fact. Looking at the time-barred argument, the Oak Tree transaction occurred in 1983, seemingly well outside the applicable federal and state law statutes of limitations. Of course, because the Reorganized Debtor amended its complaint to remove this action, the issue of whether this claim would be time-barred was never litigated. But in the face of an assertion of such a statutory bar, the Reorganized Debtor could seek to equitably toll the statute of limitations under either federal or state law. The federal doctrine of equitable tolling was developed in the context of actions based on fraud. *See Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874). The essence of the doctrine "is that a statute of limitations does not rim against a plaintiff who is unaware of his cause of action." *Long v. Abbott Mortgage Corp.,* 459 F.Supp. 108, 113 (D.Conn.1978); *Bennett v. U.S. Lines, Inc.,* 64 F.3d 62, 66 (2d Cir.1995) (citing cases). Equitable tolling may be applied in cases where the defendant is shown to have "engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence of the cause of action." *Cerbone v. International Ladies' Garment Workers' Union,* 768

F.2d 45, 48 (2d Cir.1985). New York adopts similar reasoning for state law avoidance actions. *Armstrong v. McAlpin,* 699 F.2d 79, 87 (2d Cir.1983); *Michelsen v. Penney,* 135 F.2d 409, 415 (2d Cir.1943). Thus, the facially stale claim could be found to be timely filed if either doctrine were found to apply.

■ As for whether the claim was improperly pleaded, even if the Strasser Defendants are correct, the remedy for that defect is for the court upon proper motion to either dismiss the claim under Bankruptcy Rule 7012 or grant leave to the Reorganized Debtor to replead the cause of action with particularity pursuant to Bankruptcy Rule 7009. *Official Publications, Inc. v. Kable News Co.,* 884 F.2d 664, 670 (2d Cir.1989). Sanctions are not to be imposed for vague or inartfully drafted pleadings, but for frivolous ones.

Based on the above analysis, at most, the Strasser Defendants have made out a case that the Reorganized Debtor may not have thought through the consequences of avoiding the Oak Tree note had that claim been pursued to a successful conclusion. They have not proven that the cause of action was frivolous or its assertion sanctionable.

■ Turning to the Original Complaint's eighth cause of action, it asserts that the Strasser Defendants, including Strasser himself acting on behalf of the Debtors, permitted a tolling agreement with Strasser's own affiliates to lapse to the detriment of the estate and its creditors. As it turned out, with the consent of the creditors' committee, Strasser had let the tolling agreement expire at the time that the McNamee Plan was confirmed.

Neither Venditto nor Fine describes any prefiling inquiry into the circumstances of the expiration of the tolling agreement. Oddly, when I questioned Venditto about the Reorganized Debtor's response to the Strasser Defendants' general assertion that the Original Complaint might be time-barred, for whatever reason, Venditto mentioned that his client believed that a tolling agreement existed, apparently forgetting that the Reorganized Debtor claimed otherwise in the eighth

cause of action. (More about this exchange will be said in section III(c) of this opinion.)

Venditto explained in his affidavit that he had advised me that the Reorganized Debtor believed that Strasser had permitted the tolling agreement to expire and as a result the Reorganized Debtor would seek to prohibit the assertion of a statute of limitations defense on equitable grounds. His explanation is not accurate, for it bears little resemblance to what Venditto actually said at that pretrial conference. At that time, he neither stated that Strasser permitted the tolling agreement to expire nor mentioned any equitable grounds for estopping Strasser from asserting the defense.

But in fairness to the Reorganized Debtor and counsel, we must place this in its proper context to assess what was reasonable under the circumstances at the time that the Original Complaint was filed. Venditto and Fine had no personal knowledge of what had transpired prior to the confirmation process. Neither did the management of the Reorganized Debtor, for all of them were newly in place. From the inception of the bankruptcies, Strasser had been at odds with the McNamee Group, which consisted of a sizeable dissident group of the Debtors' limited partners; he was not receptive to his ouster and replacement. No one has asserted that the potential for the expiration of the tolling agreement was disclosed to the court or parties in interest other than the committee.[7]

Facially at least, a cause of action appeared available to the Reorganized Debtor for the failure of the Debtors' former management to preserve potential causes of action against its principals and affiliates. In this circumstance, that Venditto and Fine did not learn that the tolling agreement had been allowed to expire with the agreement of the creditors' committee is thus unremarkable. More careful inquiry, perhaps of the counsel to the committee or to the Debtors, might have shed light on this problem, but I cannot say that the failure to discover the consent of the committee was so objectively unreasonable as to warrant the imposition of sanctions.[8] Given the understandable ignorance that the creditors' committee had approved of the tolling agreement's expiration, it was perfectly reasonable for Venditto and Fine to believe that the insider's decision to let lapse a tolling agreement was sufficient to give rise to equitable tolling of the statute of limitations. As a result, I cannot find anything in the Original Complaint that would meet the criteria to be deemed a frivolous pleading.

■ The second prong of the Bankruptcy Rule 9011 analysis proscribes actions undertaken for an improper purpose. *In re Reveley*, 148 B.R. 398, 407 (Bankr.S.D.N.Y.1992). As discussed earlier in this decision, under the teaching of *Sussman*, a complaint which is not frivolous is not interposed for an improper purpose.[9] But even were this Circuit

---

7. As a result, I do not mean to hold that the eighth cause of action was indeed time-barred, as the Strasser Defendants assert.

8. Case law suggests that there is nothing inherently sanctionable in asserting a time-barred claim so long as there exists a potential defense, either based in law or fact, to the expiration of a statute of limitations, such as the execution of a tolling agreement. *See, e.g., Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114, 123 (S.D.N.Y.1993) (plaintiff's counsel believed that discovery would confirm that defendants had deprived plaintiff of status); *Everett Allied Co. v. R.A. Inbows, Ltd.*, Civ. 1392(KMW), 1991 WL 4465 at *6 (S.D.N.Y. Jan. 10, 1991) (language applying relevant statute of limitations was ambiguous); *Nolan v. City of Yonkers*, No. 92 Civ. 6067(KMW), 1996 WL 120685 at *3 (S.D.N.Y. Mar. 19, 1996) (filing time-barred motion for reconsideration not sanctionable where defendant had good faith belief that court might ignore untimeliness of motion due to plaintiff's conduct). The moving parties

in these cases argued for some type of equitable tolling of the statute of limitations either because the statute was unclear or because the opposing party had acted in some improper manner to permit the statute of limitations to expire to the detriment of the moving party. Because each of the moving parties asserted a good faith basis for bringing what appeared to be time-barred claims, the courts refused to sanction them. Utilizing the same type of analysis, if Venditto and Fine had a good faith basis for believing that the statute of limitations was no bar because of an equitable tolling doctrine, then no sanctions ought flow.

9. A conflict exists among the Circuits that have addressed this issue. See 2 *Moore's Federal Practice* § 11.11[8][d] at 11–33–34 (3d ed.1998). The Second, Fifth and Ninth Circuits have held that the filing of a well-founded complaint is not sanctionable even if the complaint is filed for an improper purpose. *See, e.g., Sussman v. Bank of Israel*, 56 F.3d 450, 459 (court held that filing of

to follow the contrary rule on whether an improper purpose alone is sufficient to warrant the imposition of sanctions, I would award none here. Remember that Strasser interposed millions of dollars of claims which he had not previously filed or disclosed. If these claims were to stand, they had the heavy potential of ending the rehabilitation which had been undertaken. Asserting not only objections to those claims, but whatever affirmative claims the Reorganized Debtor possessed against Strasser and his entities

was not improper; if the affirmative claims had been sustained, they might have served to offset the substantial liability which Strasser had asserted against the Reorganized Debtor. Whereas Strasser argues that these affirmative claims have all been dropped, that is not entirely accurate, for Strasser's alleged breaches of fiduciary obligation and his self-dealing have been asserted as affirmative defenses to his challenged administrative claims.[10] And the claims regarding the

nonfrivolous complaint to generate adverse publicity about defendants is not an improper purpose; party should not be penalized merely because one of multiple purposes in seeking relief may have been improper). The Seventh Circuit, on the other hand, has ruled that filing a colorable claim for an improper purpose is sanctionable. *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).

The majority approach for judging the *bona fides* of pleadings arguably departs from the rule itself (as it was drafted prior to the 1993 amendments). The rule provided that a signature on a document was a certification of a number of things, including that the document was not interposed for an improper purpose. The rule then went on to provide for sanctions if a document were signed in violation of the rule. Since the certification included that the document was interposed for no improper purpose, it would seem that interposition of a complaint for an improper purpose would be sanctionable. But the Ninth Circuit created an exception for complaints and counterclaims, *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir.1990), in which the court reasoned that although the "improper purpose" and "frivolousness" inquiries are separate, they will often overlap since evidence bearing on frivolousness will be highly probative of purpose. *Id.* at 1361. When dealing with complaints and counterclaims, the circuit believed that the improper purpose inquiry subsumes the frivolousness inquiry. Thus, "it would be counterproductive to use Rule 11 to penalize the assertion of nonfrivolous substantive claims, even when the motives for asserting those claims are not entirely pure." *Id.* The Second Circuit later adopted this reasoning in *Sussman*.

This view has created difficulties in the Ninth Circuit itself. Faced with a Rule 11 challenge in a bankruptcy case, the Ninth Circuit later drew a distinction between federal and bankruptcy litigation for purposes of Rule 11 analysis even though, as it recognized, Fed.R.Civ.P. 11 and Bankruptcy Rule 9011 "use virtually the same language." *In re Marsch*, 36 F.3d 825, 829 (9th Cir.1994). In *Marsch*, the Ninth Circuit found that "while bankruptcy proceedings serve important purposes, they seldom carry the broad policy implications of many federal lawsuits, ... experience has shown that bankruptcy proceedings are

subject to a degree of manipulation and abuse not typical of civil litigation." *Id.* at 830. Because of this perceived distinction, the circuit went on to develop a new test that it felt was more suited to the realities of bankruptcy practice, which provided that the court must consider both frivolousness and improper purpose together on a sliding scale where "the more compelling the showing as to one element, the less decisive need be the showing as to the other." *Id.* Thus, in imposing sanctions under virtually identical rules, the Ninth Circuit uses a different test for bankruptcy matters than for civil ones.

In his dissent, Judge Trotter bemoaned the creation of the sliding scale test, arguing that *Townsend* should control both federal litigation and bankruptcy cases because the rules were identical. To do otherwise would "confirm the views of some of our critics that we are just a series of independent and disconnected panels ignoring the need to create a stable law of the circuit." *Id.* at 831. Judge Trotter also went on to label the majority's justification for the sliding scale test based on the perceived distinction between federal litigation and bankruptcy proceedings as an "apostatic claim" that is "surely not susceptible of reliable verification." *Id.*

Whether the Second Circuit will follow the Ninth Circuit's lead again, applying different tests for the imposition of sanctions in bankruptcy and civil complaints, remains to be seen.

**10.** At oral argument, Hahn & Hessen, current counsel to the Reorganized Debtors, stressed that the Amended Complaint eliminated certain claims because evaluation of the Reorganized Debtor's potential claims led to the determination that restyling the complaint would serve judicial economy by narrowing the focus of the issues to the merits of the proofs of claim filed by the Strasser Defendants. Upon first glance, this explanation seems to be nothing more than a transparent excuse for abandoning meritless certain causes of action. However, after reflecting on the fractious nature of this case, I believe that amending the complaint was a reasonable tactic of the Reorganized Debtor, notwithstanding that the Original Complaint was not frivolous or brought for an improper purpose, to concentrate on objecting to the substantial claims filed by the Strasser Claimants and avoid the added expense,

lease were carried over to the Amended Complaint. In short, there is no evidence [11] that the Original Complaint was filed with an improper purpose.

## C. Sanctions under 28 U.S.C. § 1927

Sanctions under the statute are limited to attorneys and not to the clients they represent. Imposition of sanctions under this section requires that the moving party make a clear showing of bad faith, a higher standard than that which is required for sanctions to be imposed under Bankruptcy Rule 9011. *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 230; *In re French Bourekas, Inc.*, 175 B.R. 517, 523 (Bankr. S.D.N.Y.1994) (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986), *cert. denied sub nom. Suffolk County v. Graseck*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987)), *aff'd*, 195 B.R. 19 (S.D.N.Y.1996). Unlike Bankruptcy Rule 9011 as it read prior to its recent amendment, I have discretion under § 1927 to award sanctions. *In re Wonder Corp. of America*, 109 B.R. 18, 29–30 (Bankr.D.Conn.1989).

Bad faith is present when the court finds that an attorney's actions were motivated by an improper purpose, such as harassment or delay, and were also entirely without color. *Wonder Corp.*, 109 B.R. at 28. The statute looks to "unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics." *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1339 (2d Cir. 1991).

Bad faith "can be inferred when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *New York v. Operation Rescue Nat'l*, 80 F.3d 64, 72 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 85, 136

L.Ed.2d 42 (1996). Judge Glasser has catalogued the types of acts that would justify sanctions under the "bad faith" test of section 1927, including "resubmitting a motion that had previously been denied;" "bringing a motion based on 'facts' the opposite of which were previously found by the court;" "making several insupportable bias recusal motions and repeated motions to reargue;" "continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions in addition to insinuating that the court was biased;" and "waiting until the eve of trial before making a jury demand." *Hudson Motors Partnership v. Crest Leasing Enterprises*, 845 F.Supp. 969, 978 (E.D.N.Y.1994); *Keller v. Mobil Oil Corp.*, 55 F.3d 94, 99 (2d Cir.1995).

This Circuit has held for some time that attorneys should not be "disciplined by financial reprisal for conduct attributable to mistake, inadvertence or error of judgment." Instead, a finding of recklessness is needed. *In re Sutter*, 543 F.2d 1030, 1035 (2d Cir. 1976) (lawyers attentive to their responsibilities need not be apprehensive about financial reprisals due to honest mistakes or errors of judgment). Section 1927 is designed to encourage lawyers to conduct themselves in such a manner that will not frustrate or delay the effective administration of justice. *Id.* at 1036.

The Strasser Defendants seek to have both Fine and Venditto sanctioned because they allegedly had threatened to commence litigation against the Strasser Defendants solely to make it risky and expensive for them to pursue their claims. According to the Strasser Defendants, Fine and Venditto then made good on their threat by filing a frivolous Original Complaint. In addition, the Strasser Defendants say, Venditto's statement at the pretrial conference that a tolling agreement was in effect served to mislead me. Although they do not flesh out

delay and risk of trying to prosecute affirmative claims against them.

11. The parties have engaged in a battle of affidavits regarding their settlement discussions prior to the filing of the Original Complaint. They diverge sharply as to the tenor of their abortive discussions. The Strasser Defendants would like

me to find that the Reorganized Debtor's attorneys' threats to file a complaint show their bad faith and intent to harass the Strasser Defendants. Because neither party offered to put on witnesses regarding this issue, in light of the factual contest, I decline to make such a finding.

their reasoning, the Strasser Defendants appear to argue that these actions were part of a campaign intended to harass the Strasser Defendants (improper purpose) by filing the Original Complaint and misleading the court as to whether certain causes of action were time-barred (without color), all of which led to an unreasonable multiplication of proceedings. I have already determined that the Strasser Defendants did not carry their burden of showing that the Original Complaint was filed for an improper purpose. At worst, Fine and Venditto are guilty of inadvertently not discovering that the creditors' committee concurred in Strasser's decision to let lapse the tolling agreement with his affiliates. But, as I've already suggested, that may not necessarily have cleansed his actions vis-à-vis the estate in any event inasmuch as he apparently did not give notice to or obtain similar consent from the secured lender or the limited partners. Plainly, this failure of the complaint is insufficient to sustain a finding of bad faith.

■ The other asserted ground for sanctions according to the Strasser Defendants is that Venditto incorrectly represented that a tolling agreement existed which would trump the Strasser Defendants' raising of the statute of limitations as an affirmative defense in their answer to the Original Complaint. At the January 25, 1996 pretrial conference which was held after the Strasser Defendants filed their answer, I asked Venditto about the assertion of the statute of limitations. Venditto replied, "The Reorganized Debtor believes there's a tolling agreement which has extended the statute of limitations and this adversary proceeding has been timely filed." Pretrial Conference, Jan. 25, 1996, Tr. at 5. As it turns out, no such agreement was ever produced.

The Strasser Defendants assert that any previous tolling agreement that did exist had expired by agreement between the creditors' committee and the Debtors, an assertion that no party disputes. Indeed, the Strasser Defendants say, upon learning this fact the Reorganized Debtor's new counsel amended the Original Complaint to eliminate that cause of action.

I have reviewed carefully the hearing transcript and the pleadings in this adversary proceeding and cannot make logical sense of this exchange. The eighth cause of action asserts that the Strasser Defendants, including Strasser acting on behalf of the Debtors, permitted the tolling agreement to lapse to the detriment of the estate and its creditors. Yet, when I inquired of Venditto generally as to how the Reorganized Debtor responded to the Strasser Defendants' claim that the Original Complaint might be time-barred, for some reason, Venditto instead mentioned that his client believed that a tolling agreement existed that made the claims timely, apparently forgetting that the Reorganized Debtor claimed otherwise in its eighth cause of action. The only explanations for this inconsistency are that Venditto misremembers the facts or was confused about what I was questioning.

■ The Strasser Defendants are quick to pounce on this exchange to show that the Reorganized Debtor and its counsel were misleading the Court. However, I draw a distinction here between a statement made by an attorney due to an honest mistake or confusion and a statement intentionally made to mislead the court. The former cannot be sanctionable; the latter may be under certain circumstances. In *In re French Bourekas, Inc.*, I sanctioned an attorney whose statements were neither probative nor believable and had been uttered solely to obtain a delay in the proceedings. 175 B.R. 517, 524 (Bankr.S.D.N.Y.1994), *aff'd* 195 B.R. 19 (S.D.N.Y.1996). Venditto's statement on the other hand is couched in terms of his client's belief, and while he may have spoken incorrectly, his statement was not intended to obtain an improper purpose such as delay or harassment.

I am buttressed in this conclusion by case law in this Circuit as well as others. In *Hudson Motors,* Judge Glasser found that an attorney must intentionally seek to advance a baseless contention that is made for an ulterior purpose, e.g., harassment or delay. *Hudson Motors Partnership v. Crest Leasing Enterprises,* 845 F.Supp. at 979. Other circuits have held similarly. *Malhiot v. Southern Calif. Retail Clerks Union,* 735

F.2d 1133, 1138 (9th Cir.1984), *cert. denied sub nom. Jampol v. Calif. Retail Clerks Union,* 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985) (besides misrepresenting the record, counsel's brief contained intentional misstatement of California law); *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184 (7th Cir.1992) ("Indeed, when we look to the facts in our prior decisions, we find no cases where we have upheld sanctions upon a showing of a simple mistake or ordinary negligence"). Under the facts of this case, I cannot find that the Strasser Defendants have made the necessary showing of bad faith. Neither the filing of the Original Complaint nor Venditto's misstatement led to increased proceedings because the Strasser Defendants nonetheless had to assert the defense of the statute of limitations, a waivable defense, whether or not the Reorganized Debtor had valid grounds to overcome the assertion. Accordingly, I do not find that the behavior of Fine and Venditto warrants the imposition of sanctions against them under this section. *See United States v. Merritt–Meridian Constr. Corp.* 890 F.Supp. 1213, 1218 (S.D.N.Y.1995), *aff'd in part, vacated in part,* 95 F.3d 153 (2d Cir.1996).

### D. Sanctions under 11 U.S.C. § 105(a)

Section 105(a) of the Bankruptcy Code provides in pertinent part that a bankruptcy court

> may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title ... shall be construed to preclude the court from, *sua sponte,* taking any action or making any determination necessary or appropriate to ... prevent an abuse of process.

▮▮▮ It is well established that a district court "has inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sassower v. Field,* 973 F.2d 75, 80– 81 (2d Cir.1992), *cert. denied,* 507 U.S. 1043, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993) (*citing Chambers· v. NASCO, Inc.,* 501 U.S. 32, 44–45, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27); *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986), *cert. denied,* 480

U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). Bankruptcy courts have the same inherent sanction authority as district courts, *Ngan Gung· Restaurant, Inc. v. Official Committee of Unsecured Creditors (In re Ngan Gung Restaurant, Inc.),* 195 B.R. 593, 598–99 (S.D.N.Y.1996) (citing cases), and they can impose sanctions against a party as well as counsel. *In re French Bourekas, Inc.,* 175 B.R. 517, 525 (citing cases), *aff'd* 195 B.R. 19 (S.D.N.Y.1996). Although the inherent power was originally conceived as an exception to the American Rule permitting attorney's fees against the losing party, *see Hirschfeld v. Board of Elections,* 984 F.2d 35, 40 (2d Cir.1993); *Oliveri v. Thompson,* 803 F.2d at 1272, the Supreme Court has made it clear that a federal court has the power to sanction the winner as well as the loser. *See Chambers,* 501 U.S. at 53, 111 S.Ct. at 2137.

▮▮▮ The inherent power to sanction "stems from the very nature of courts and their need to be able to 'manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *United States v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir.1991). It is not limited to bad faith filings; a court can award sanctions either for commencing or for continuing an action in bad faith, vexatiously, wantonly, or for oppressive reasons. "[B]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Oliveri v. Thompson,* 803 F.2d at 1272 (quoting *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973)).

▮▮▮ Further, a court can award sanctions under its inherent authority against an attorney as well as a party. *Sussman v. Bank of Israel,* 56 F.3d 450, 459 (2d Cir.) ("[a] court has the inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad faith conduct"), *cert. denied,* 516 U.S. 916, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995); *see generally, In re Spectee Group, Inc.,* 185 B.R. 146, 155 (Bankr.S.D.N.Y.1995). "These powers, moreover, are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to

achieve the orderly and expeditious disposition of cases.'" *People by Abrams v. Terry,* 45 F.3d 17 (2d Cir.1995) (*quoting Chambers,* 501 U.S. at 43, 111 S.Ct. at 2132).

■■■■ The Supreme Court nonetheless "has cautioned that because of the 'very potency' of a court's inherent power, it should be exercised 'with restraint and discretion.'" *United States v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991) (*quoting Chambers,* 501 U.S. at 44, 111 S.Ct. at 2132). For this reason the Second Circuit "has always required a particularized showing of bad faith to justify the use of the court's inherent power." *Teamsters,* 948 F.2d at 1345; *see also Sussman,* 56 F.3d at 459 (inherent power permits court to impose sanctions on the basis of related bad faith conduct). Because "the imposition of sanctions for bad faith obviously entails an inquiry that is at least in part subjective," *Sussman,* 56 F.3d at 460, "the court's factual findings of bad faith must be characterized by a high degree of specificity." *Milltex Industries Corp. v. Jacquard Lace Co., Ltd.,* 55 F.3d 34, 38 (2d Cir.1995) (citation omitted). Thus, the Second Circuit requires (1) clear evidence that the challenged actions were entirely without color and taken for improper purposes such as harassment or delay; and (2) a high degree of specificity in the court's factual findings before sanctions may be imposed under the inherent power doctrine. *Bowler v. United States Immigration & Naturalization Service,* 901 F.Supp. 597, 605 (S.D.N.Y.1995) (citing *Teamsters,* 948 F.2d at 1345). As I have found above, the Strasser Defendants have failed to provide any convincing evidence that the filing of the Original Complaint or the conduct of the Reorganized Debtor and its counsel were improper, either because the claims asserted were without color or because the motives underlying the filing of the complaint and the challenged actions were impure. Accordingly, I find that no sanctions should be imposed against these parties under my inherent power.

*Conclusion*

Because I find that the Strasser Defendants have failed to establish that the conduct of the Reorganized Debtor, Venditto or Fine warrants sanctions, I am denying the motion in full. The Reorganized Debtor is directed to SETTLE AN ORDER consistent with this decision.